Patricia PATTERSON *v.* FRITO LAY, INC., and
Lumberman's Mutual Casualty Company

CA 98-1016 992 S.W.2d 130

Court of Appeals of Arkansas
Division I
Opinion delivered April 14, 1999

*Rice & Adams*, by: *Ben E. Rice*, for appellant.

*Rieves & Mayton*, by: *Eric Newkirk*, for appellees.

TERRY CRABTREE, Judge. Patricia Patterson appeals the decision of the Workers' Compensation Commission reversing the administrative law judge's finding that she sustained a compensable bilateral knee injury as a result of rapid repetitive motion. Appellant argues that the Commission erred in finding: (1) that the activities performed were not rapid and repetitive; (2) that the work activities of the appellant were not the major cause of her gradual-onset injury; and (3) that there was no basis for finding that the testimony of the appellant and her corroborating witnesses was not credible. We agree and therefore reverse and remand the findings of the Workers' Compensation Commission.

The appellant worked as a store representative for Frito Lay beginning in late November 1994. For a year prior to that, she worked as a swing store representative before her promotion to her current position. Goldie Powell, appellant's supervisor, explained that a store representative has more overall responsibilities than a swing store representative. Appellant contends that she developed her bilateral knee problems as a result of her employment after her promotion in November 1994. She discontinued working in March of 1995 due to the problems she was experiencing with her knees and sought medical treatment for her knee conditions at that time. Although she was having problems with both knees, only the left knee is at issue here.

At the hearing held on June 27, 1997, appellant contended that her left knee problems resulted from rapid repetitive motion of her left knee and were therefore a compensable injury. Conversely, the appellee contended that appellant's left knee problems were not compensable under Act 796. The full Commission found that the appellant did not meet all requirements for gradual-onset injuries. Such injuries are controlled by Ark. Code Ann. § 11-9-102(5)(A)(ii) (Supp. 1997), which states that an employee must prove by a preponderance of the evidence that she sustained internal or external damage to her body as a result of an injury that arose out of and in the course of employment, the employee must establish the compensability of a claim with medical evidence, and that evidence must be supported by objective findings. Arkansas Code Ann. § 11-9-102(5)(A)(ii) sets forth exceptions in which the employee must also prove that the "resultant condition is compensable only if the alleged compensable injury is the major cause of the disability or need for treatment." Furthermore, Ark. Code Ann. § 11-9-102(5)(A)(ii)(a), the specific provision governing this claim, requires the appellant to prove that the injury was caused by "rapid repetitive motion."

 This court reviews decisions of the Workers' Compensation Commission to see if they are supported by substantial evidence. *Deffenbaugh Indus. v. Angus*, 39 Ark. App. 24, 832 S.W.2d 869 (1992).[1] Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Wright v. ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). The issue is not whether this Court might have reached a different result from that reached by the Commission, or whether the evidence would have supported a contrary finding. This court will not reverse the Commission's decision unless fair-minded persons considering the same facts could not have reached the same conclusion. *Golden v. Westark Community College*, 333 Ark. 41, 969 S.W.2d 154 (1998). It is the function of

---

[1] This standard of review has been challenged several times but has been left unresolved by the Arkansas Supreme Court because the issue was not raised before the Commission. *See Scarbrough v. Cherokee Enterprises*, 306 Ark. 641, 816 S.W.2d 876 (1991).

the Commission to determine the credibility of the witnesses and the weight to be given their testimony.[2] *Jeter v. B.R. McGinty Mechanical*, 62 Ark. App. 53, 968 S.W.2d 645 (1998). However, the Commission may not arbitrarily disregard any witness's testimony. *Swift-Eckrich, Inc. v. Brock*, 63 Ark. App. 118, 975 S.W.2d 857 (1998). It is the responsibility of the Commission to draw inferences when the testimony is open to more than a single interpretation, whether controverted or uncontroverted, and when it does so, its findings have the force and effect of a jury verdict. *Service Chevrolet v. Atwood*, 61 Ark. App. 190, 966 S.W.2d 909 (1998). The Commission is not required to believe the testimony of the claimant or any other witness. The testimony of an interested party is always considered to be controverted. *Continental Express v. Harris*, 61 Ark. App. 198, 965 S.W.2d 811 (1998). Even though the Commission is insulated to a certain degree from appellate review, its decisions are not insulated to the degree it would make appellate review meaningless. *Jordan v. J.C. Penney Co.*, 57 Ark. App. 174, 944 S.W.2d 174 (1997). Furthermore, benefits are not always denied to a claimant who has been untruthful.[3] *Boyd v. General Industries*, 22 Ark. App. 103, 733 S.W.2d 750 (1987).

█ The appellant asserts that the Commission erred when it found that the appellant's work activities were not "rapid and repetitive" as required by statute. The Commission evidently took the testimony of the appellant as true that she spent forty percent of her time on her knees moving back and forth stocking the lower shelves. However, because the appellant went to four different stores, the Commission concluded that she only spent ten percent of her time on her knees. This logic is flawed and there is no basis in the record for the conclusion reached by the Commission. The appellant and two other witnesses testified to a greater percentage of the time that the appellant was required to work on her

---

[2] The fact that the ALJ's decision is not to be considered, even in regard to the credibility of witnesses, may very well be a violation of due process of law. However, we do not consider that issue because it was not raised below. *See Scarbrough, supra.*

[3] Obviously, if the claimant was untruthful regarding one of the essential elements of the claim, the claimant would not be able to meet his burden of proof.

knees. Even the sole witness for the appellee indicated a higher percentage. We are firmly convinced that this conclusion of the Commission was in error. Based on our opinion that the Commission's determination that the appellant was not in a position putting pressure on her knees for more than ten percent of the time was error, we must now turn to whether the appellant's movements were rapid and repetitive.

■ The Commission concluded that the appellant's testimony concerning the number of back and forth movements was not credible, but even if it were, the Commission opined that the facts are more similar to the facts in *Lay v. United Parcel Service*, 58 Ark. App. 35, 944 S.W.2d 867 (1997) than in other cases, namely, *Kildow v. Baldwin Piano & Organ*, 58 Ark. App. 194, 948 S.W.2d 100 (1997) (reversed on other grounds *Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998)), and *Rudick v. Unifirst Corp.*, 60 Ark. App. 173, 962 S.W.2d 819(1998). The facts in the *Lay* case are dissimilar to the facts of this case. In *Lay*, the UPS driver had long periods of time that he had to drive between locations. Further, the appellant's injury was to his elbow, which was not placed and used in an unusual position. While the appellant in this case had breaks in between the times that she was on her knees stocking the shelves, the times that she was on her knees she was, out of necessity, moving back and forth. Just as in *Baysinger v. Air Systems, Inc.*, 55 Ark. App. 174, 934 S.W.2d 230 (1996), we feel the Commission's interpretation of what is rapid and repetitive is too restrictive. The Commission must consider the positioning of the part of the body as well as the number of movements the claimant has to undergo to determine if the movement is "rapid and repetitive." In this case, the Commission's analogy of the appellant's movements to that of a person "standing on one's feet taking small steps from side to side to side" is clearly not applicable to the facts of this case. While stepping from side to side on one's feet is a normal function, resting on one's knees moving back and forth is not a normal function of the knee.

■ We are concerned with the statement in the Commission's opinion that the claimant's testimony is never considered uncontroverted (citing *Nix v. Wilson World Hotel*, 46 Ark. App. 303, 879 S.W.2d 457 (1994); *Lambert v. Gerbert Products Co.*, 14 Ark. App. 88, 684 S.W.2d 842 (1985)). We recognize that we have held on numerous occasions that a party's testimony is never considered uncontroverted. However, the Commission's opinion seems to indicate that only the claimant's testimony is never considered uncontroverted. We would point out that Act 796 of 1993 requires that neither party be given the benefit of doubt. To consider one party's testimony always controverted without considering the same for the opposing party would fly in the face of this clear mandate.

■ Considering the flawed logic upon which the Commission based its opinion as to whether the appellant's movements were rapid and repetitive, we find that fair-minded people could not reach the same conclusion as the Commission and reverse the Commission's decision as to the first issue.

The appellant also asserts that the Commission erred in finding that the appellant failed to prove that the work activities were the major cause of her gradual-onset injury. The Commission stated in its opinion, "Rather, all opinions addressing causation refer directly to claimant's work of standing on concrete floors 12 to 15 hours per day."

The appellant sought treatment from Charles W. Himmler on March 24, 1995. Dr. Himmler noted that the appellant suffered from rheumatoid arthritis and prescribed anti-inflammatory medication as well as rest for two weeks. In a follow-up letter of April 27, 1995, Dr. Himmler again referred to rheumatoid disease and opined that the arthritis flared up because of excessive work hours. On June 23, 1995, Dr. Himmler noted that the appellant's knees were worse and that the original diagnosis of rheumatoid arthritis might have been incorrect. He also noted that there was no other joint involvement and that the problem might be overuse syndrome.

On August 8, 1995, the appellant consulted Dr. Abraham. Dr. Abraham agreed with Dr. Himmler that the appellant suffered from overuse syndrome and noted that the problem might have been triggered by her excessive standing on concrete floors.

Dr. Martin saw the appellant on October 24, 1995. Dr. Martin stated in a report that while the appellant was working for Frito Lay, she was required to do a lot of walking, standing and climbing. He also noted that the appellant's pain was much worse when she would get up from a sitting position with squatting, standing or stair climbing.

In his deposition, Dr. Martin testified as to the nature of the appellant's injury:

> She had chondrosis, which means that the cartilage is disrupted, just on the back of the kneecap. The kneecap articulates with the end of the femur on the thigh bone, and anytime the knee is bent there is an increasing pressure on the knee cap at that articulation, sometimes a force up to six times the body weight just across the joint. The cartilage on the kneecap had cracks in it and was roughened up. It almost looks like crab meat that is hanging on the back side of the kneecap as opposed to the smooth cartilage surface. . . .The condition was chondrosis, which is a degeneration of sorts of the cartilage on the back of the kneecap due to wear and tear.
>
> Sometimes we see this condition as a result of normal activities, but most often it's overuse, for example someone training for a marathon or someone working on weights and doing too many squats or just too many stairs, too many up-and-down motions, squatting.

When asked about causation, Dr. Martin testified that he could state with a reasonable degree of medical certainty that it "would be her work and the squatting activities that she was doing at the time."

 We well understand that the Commission makes determinations of credibility. When the determination must be made between competing medical opinions, the Commission decides which to believe. However, in this case, the medical

opinions are not opposed. Dr. Himmler initially diagnosed the appellant as suffering from arthritis but later determined that because the appellant's problem did not have other joint involvement, he questioned that diagnosis and felt it was more of an overuse syndrome. Later, this was substantiated by Dr. Abraham. The appellant was finally seen by Dr. Martin, who performed surgery on the appellant. He clearly stated that the overuse was due to activity that involved bending the knee. The medical opinions are not in conflict but demonstrate the development of a diagnosis that was appropriate for the appellant. There is no testimony whatsoever that Dr. Martin's diagnosis and treatment was incorrect. It is notable that Dr. Martin testified that the pressure on the knee where it articulated with the thigh femur was often six times greater than the person's body weight and that the injury was at the knee where the patella is next to the thigh femur. It is abundantly clear that the injury was a direct result of the appellant's work activities. We do not believe that fair-minded people could reach the same decision as the Commission on the second issue, and therefore reverse.

The final issue argued by the appellant is that there is no basis for the Commission's finding that the appellant and the appellant's witnesses were not credible. We agree. Again, we are well aware of the long-standing rule of law that the determination of the credibility of the witnesses and the weight given their testimony are matters exclusively within the province of the Commission. *Graham v. Turnage Employment Group*, 60 Ark. App. 150, 960 S.W.2d 453 (1998). However, the Commission is not totally insulated from judicial review on credibility issues. *Jordan v. J.C. Penney Co.*, 57 Ark. App. 174, 944 S.W.2d 547 (1997). The Commission may not arbitrarily disregard the testimony of any witness. *See Boyd v. Dana Corp.*, 62 Ark. App. 78, 966 S.W.2d 946 (1998). Where, as here, the appellant alleges that the Commission arbitrarily disregarded the testimony of witnesses, there must be some articulated fact in the Commission's opinion that supports its findings. In this case, there is none. The Commission merely stated that it had reviewed the record and determined that the appellant lacked credibility.

The Commission is limited to reviewing the record and, thus, the demeanor of the witnesses is not an issue. The Commission must glean from the record an indicia of credibility. Because it is limited to the record, the Commission must be able to clearly state the reasons for its determination of credibility, especially when that determination is contrary to the findings of the ALJ who actually observed the witnesses. We cannot discern from the abstract any indication that the witnesses were untruthful. In fact, the contrary is true. The testimony was reasonably consistent throughout, including the testimony of the sole witness for the appellee. Due to the fact that the Commission failed to state its reasons for its determination that the appellant lacked credibility, and the lack of evidence in the record to support such a finding, we conclude that the Commission arbitrarily disregarded the testimony of the witnesses and reached its conclusion based on speculation and conjecture.

Even if we were to conclude, which we do not, that the Commission properly found that the appellant lacked credibility, that would not end our inquiry. We must then look to the remaining evidence to see if the decision of the Commission is supported by substantial evidence and whether fair-minded people could reach the same decision as the Commission. *Kuhn v. Majestic Hotel*, 324 Ark. 21, 918 S.W.2d 158 (1996). We cannot conclude that they would. The remaining evidence would not support the decision of the Commission. As discussed *supra*, the Commission's analysis is flawed regarding its interpretation of whether the work activities of the appellant were rapid and repetitive and whether the injury was supported by objective medical findings. Considering the remaining evidence, it is clear that there is insufficient evidence to support the Commission's decision and that fair-minded people could not reach the same result.

We reverse the decision of the Commission and remand for an award of benefits.

GRIFFEN and NEAL, JJ., agree.