Tim WINSLOW *v.* D & B MECHANICAL CONTRACTORS

CA 99-943                                    13 S.W.3d 180

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered March 15, 2000
[Petition for rehearing denied April 19, 2000.* ]

---

* HART, J. would grant.

286

*Snellgrove, Langley, Lovett & Culpepper*, by: *Todd Williams*, for appellant.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *David Landis* and *Mark Alan Mayfield*, for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant in this workers' compensation case was employed by appellee as a plumber. Appellant's work was very strenuous, including such activities as digging trenches, carrying 200-pound loads, and jumping into trenches while carrying 100-pound loads on his shoulder. He sustained a compensable ruptured disc in November 1992 when he fell from a ladder while attempting to shut off a sprinkler valve. He was treated surgically for a ruptured disc, improved dramatically, and returned to work six weeks later.

In July and August of 1993, approximately four months after he returned to work, appellant began experiencing back symptoms while carrying and laying pipe. The new symptoms differed from his original symptoms in that they were not localized on the right side of the body, but instead affected both sides. Appellant saw several physicians for a gradually increasing number of complaints, but all of the physicians save one concluded that he was not a

candidate for additional surgery. The one physician who did recommend additional surgery, Dr. Ricca, ultimately performed additional surgery on appellant, performing a fusion at L4-5 and removing a recurrent herniated disc at that level. However, Dr. Ricca characterized his decision to do so as reluctant, and testified that the attempt to improve appellant's condition by additional surgery was "heroic" and ultimately ineffective.

Appellant sought medical benefits for the repeat surgery and permanent total disability benefits. The Commission found that appellant's worsened condition following his return to work resulted from a new injury sustained while carrying 100-to-200-pound pipe, that the additional surgery was not reasonably necessary for treatment of appellant's compensable injury, and that appellant was not permanently and totally disabled. From that decision, comes this appeal.

For reversal, appellant contends that the Commission erred in finding that appellant sustained a new injury after July of 1993, in finding that the additional surgery was not reasonable and necessary medical treatment for his compensable injury, and in finding that appellant was not permanently and totally disabled. We affirm.

■■ In determining the sufficiency of the evidence to support the findings of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we will affirm if those findings are supported by substantial evidence. *Wal-Mart Stores, Inc. v. VanWagner*, 63 Ark. App. 235, 977 S.W.2d 487 (1998). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Nelson v. Timberline International, Inc.*, 57 Ark. App. 34, 942 S.W.2d 260 (1997). The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case *de novo*. *Stephens Truck Lines v. Millican*, 58 Ark. App. 275, 950 S.W.2d 472 (1997). The determination of the credibility and weight to be given a witness's testimony is within the sole province of the Commission. *Min-Ark Pallet Co. v. Lindsey*, 58 Ark. App. 309, 950 S.W.2d 468 (1997). The Commission is not required to believe the testimony of the claimant

or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *American Greetings Corp. v. Garey*, 61 Ark. App. 18, 963 S.W.2d 613 (1998).

■ Appellant first contends that the Commission erred in finding that he sustained a new back injury or aggravation after his initial surgery. In so finding, the Commission noted in its opinion that appellant encountered only minimal problems following his initial surgery and was able to return to work after only six weeks. The Commission also noted that, after performing strenuous physical labor in August 1993, appellant experienced pain even greater than the pain he had prior to surgery, and that this new pain was not limited to one leg, as had been the case following his original injury, but was felt in both legs. The evidence relied upon by the Commission is supported by the record, and on this record we cannot say that reasonable persons could not conclude that appellant sustained a new injury after July of 1993.

■ Appellant next contends that the Commission erred in finding that the additional surgery was not reasonable and necessary medical treatment for his compensable injuries. We do not agree. As the Commission noted, with the exception of Dr. Ricca, every physician who saw appellant was of the opinion that additional surgery was not indicated. Even Dr. Ricca characterized his decision to perform additional surgery as a reluctant one made after appellant implored him to do so. Dr. Ricca also testified that the attempt to improve appellant's condition by additional surgery was "heroic" and ultimately ineffective, and stated that, in retrospect, the spinal fusion was not necessary because appellant did not have a condition that it would benefit. The Commission also noted that appellant stated that he did not benefit from the additional surgery. Postsurgical improvement is a proper consideration in determining whether the surgery was reasonable and necessary, *see Linn Care Center v. Cannon*, 74 Or. App. 707, 704 P.2d 539 (1985), and on this record, where even the surgeon who performed the procedure believed that it would not be effective and where no postsurgical improvement took place, the Commission did not err in finding that the additional surgery was not reasonably necessary for treatment of appellant's compensable injuries.

■ Finally, appellant contends that the Commission erred in finding that he was not permanently and totally disabled. We do not agree. In reaching its decision on this issue, the Commission considered evidence that appellant's first compensable injury and surgery resulted only in a ten-percent physical impairment rating; that appellant was only thirty-seven years old and was able to study for and obtain a plumbing license; and that, throughout the medical records, appellant was characterized as a malingerer with grossly exaggerated pain complaints, a characterization borne out by evidence that appellant was physically capable of climbing a ladder to the roof of his house to repair a satellite dish, and of initiating a fight in which he hit and kicked another man. We hold that the Commission did not err in finding that appellant was not permanently and totally disabled.

Affirmed.

ROBBINS, C.J., and JENNINGS, BIRD, and ROGERS, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting. The majority permits the employer to reject appellant's request for medical treatment until the delay renders medical treatment ineffective. Therefore, I respectfully disagree. Appellant suffered a compensable, work-related injury in November 1992. Dr. Gregory Ricca, a neurosurgeon, performed a diskectomy and laminectomy on appellant's back at the L4-5 level. After only six weeks, appellant eagerly returned to work, but experienced recurrent symptoms in August 1993. After obtaining additional myelograms, Dr. Ricca diagnosed appellant with a recurrent disc rupture and scheduled surgery.

Appellee canceled surgery and sent appellant for an independent medical examination with Dr. James R. Feild. Without referring to the myelogram or obtaining any other objective diagnostic tests, Dr. Feild opined that appellant was malingering and recommended that his medical treatment be terminated. Appellee's workers' compensation carrier accepted Dr. Feild's recommendation and refused to pay for surgery. Dr. Ricca, although he consistently maintained his belief that the appellant had suffered a recurrent disc rupture of the L4-5, thereafter recommended that appellant receive pain management treatment. This treatment was also denied by the appellee and by the administrative law judge.

Other medical professionals also opined that the appellant needed further treatment. Dr. Larry Mahon recommended structured physical therapy, and Dr. Edward Saer recommended that the appellant work with a pain specialist and obtain another MRI. Dr. John Woloszyn recommended continued neurosurgical care and stated that the appellant's symptoms were all lumbar in nature.

Additional diagnostic testing was performed on November 30, 1995, and an MRI revealed that appellant had a "right side epidural soft tissue process at L4-5 which occupies a significant fraction of the spinal canal and causes lateral compression of the thecal sac," and further "[t]he right L4-5 neuroforamen is severely compromised." A bone scan performed on January 26, 1996, showed a "very hot pedicle" on the right at the L5 level. On that same date, an MRI of the lumbar spine showed "[e]pidural fibrosis around the right L5 nerve root at the L4-5 level." A myelogram performed on June 18, 1996, revealed "[n]on-filling root sleeves right side L4-5 and L5 S1 consistent with HNP." On May 13, 1997, an MRI of the lumbar spine, with and without contrast, showed at L3-L4 a "small central disc bulge and an osteophyte effacing the thecal sac and nerve roots" and at L4-L5 a "prominent posterior disc bulge and some facet and ligamentous thickening." When appellant returned on June 5, 1997, for reevaluation, Dr. Ricca opined that some of appellant's pain was related to a recurrent HNP and some was discogenic pain. Although Dr. Ricca was reluctant to again perform surgery on appellant, he agreed to do so because this was appellant's only chance to be relieved of his chronic pain.

In the operative report of June 18, 1997, Dr. Ricca related that he had indeed found a "recurrent disc fragment ventral to the right L5 nerve root." He described it as small but impinging upon the root that was encased in scar tissue and not mobile. He also found a broad-based original disc rupture extending off the left side. Thus, the findings from the surgery verified Dr. Ricca's initial diagnosis and established the etiology of appellant's recurrent and long-standing problem.

The Commission, finding that the surgery did not relieve appellant's pain, denied appellant's claim for medical benefits related to the surgery. The Commission stated:

> [W]e are not persuaded to find that the denial of surgery as recommended by Dr. Ricca in 1993 contributed to claimant's

deterioration, thus necessitated [*sic*] the surgery in June of 1997 ....
In finding that the denial of a "re-do" laminectomy did not cause
claimant's physical condition to deteriorate, it is noted that a
laminectomy and diskectomy was performed at the time of the
fusion. A review of the operative report clearly shows that in
addition to fusing the claimant, Dr. Ricca excised claimant's disc
material which he had previously wanted to do in August of 1993.
Yet, despite this, claimant continued to maintain that neither of
these procedures benefitted him. Accordingly, after weighing the
credible evidence of record, we find that the overwhelming weight
of the evidence preponderates in favor of finding that the surgical
fusion performed by Dr. Ricca on June 18, 1997, was not reasona-
ble and necessary medical treatment related to claimant's compen-
sable injuries.

However, undisputed medical testimony was presented by Dr.
Ricca that early treatment makes a big difference in recovery. Dr.
Ricca testified as follows:

[E]arly on, treatment makes a big difference in recovery.
That's the simple answer. The complicated answer has to do with
pain, pain pathways, transmission of pain, nerves.

In people who have failed back syndrome that have been
studied, people that have delayed care with long standing pain have
actual changes of their nerves. The nerves will function different
physiologically. They will start sending pain impulses to the brain
where there's none there.

There are some old studies that have been very good that
show that people who get treatment after three months don't do as
well as people who get treatment before. It was particularly done in
workmen's comp cases with patients years ago. And so there are
arguments that if you have a patient who is hurting and you let
them hurt for years, by the time you get to them, you are not
going to be able to help them very much. And I've seen that time
and time again in practice. For whatever reason, people have
delayed their care, farmers or insurance companies or whatever.
But people who have a problem, particularly with nerves, nerves
don't heal well, and if you let it stay long standing, you can at time
get changes with the nerves causing excessive pain impulses sent to
the brain even though there's nothing bad going on in the nerve or
the leg or whatever.

Further, the references from Dr. Ricca's testimony used by the
Commission to support its finding that Dr. Ricca admitted that the

surgery was unnecessary, are taken out of context. Dr. Ricca said that in *retrospect* the appellant's problem was not one that required fusion because he ultimately did not do well. In responding to the inquiry of whether the surgery was reasonable, he related:

> [I] believe it was a reasonable medical decision to do that at that time based on the condition of his back and the pain and the problems he was having. It's just unfortunate that it wasn't beneficial. The reason it was reasonable is that he did have real degenerative changes, he did have a previous ruptured disc, he did have what appeared to be, and I found in the surgical findings, a recurrent ruptured disc. All those things made it a reasonable option.

The Commission chose to deny appellant medical benefits, despite the fact that he suffered a ruptured disc and an impinged nerve root, by focusing on his dramatic pain behavior. The Commission's decision ignores the etiology of appellant's pain and Dr. Ricca's undisputed explanation of the reason for his continual pain. Instead, the Commission approached appellant's addiction to pain medication as though it was unrelated to his medical condition.

Arkansas Code Annotated section 11-9-508 (Repl. 1996) provides that the employer shall promptly provide such medical and surgical services to an injured employee as may be reasonably necessary in connection with the injury. Here the employer chose to ignore the medical advice of Dr. Ricca and the findings established by a myelogram, and instead embraced the opinion of Dr. Feild, whose medical report failed to reference any objective medical testing. As a result, appellant suffered years of pain before Dr. Ricca's initial diagnosis was verified by the surgical procedure that the Commission determined to be unnecessary medical treatment.

We affirm the Commission's decisions when they are supported by substantial evidence. Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Patterson v. Frito-Lay, Inc.*, 66 Ark. App. 159, 992 S.W.2d 130 (1999). I am mindful that we do not reverse the Commission unless fair-minded persons considering the same facts would not have reached the same conclusion. *Id*. Here the Commission ignored the results of medical testing and the recommendations of all the medical providers except Dr. Feild, and centered their finding on the premises that the appellant was addicted to prescription pain medication.

The decision in this case holds that an employee who suffers a work-related injury resulting in a herniated disc and nerve root impingement is not entitled to have the disc removed nor the impinged root excised. I do not believe that an employer is relieved of the obligation to pay for medical treatment for a work-related injury simply because the treatment was unsuccessful.