Betty COX *v.* KLIPSCH & ASSOCIATES
and Liberty Mutual Insurance Company

CA 00-329                                          30 S.W.3d 764

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered November 15, 2000

*William F. Magee,* for appellant.

*Shackleford, Phillips, Wineland & Ratcliff, P.A.,* for appellees.

OLLY NEAL, Judge. Appellant Betty Cox appeals from a decision of the Arkansas Workers' Compensation Commission finding that she failed to prove by a preponderance of the evidence that she was entitled to surgical treatment performed by Dr. Robert Abraham, and that the percutaneous diskectomy performed by Dr. Abraham was reasonable or necessary in relation to appellant's compensable injury. On appeal, appellant argues that the evidence does not support the Commission's findings.

Appellant sustained a compensable back injury on September 26, 1991, while employed with appellee, Klipsch & Associates. Appellant injured her back while pushing stereo speakers that had jammed on an assembly line. On March 10, 1995, a hearing was held before the administrative law judge (ALJ) to determine appellant's entitlement to wage-loss disability benefits. Following the hearing, the ALJ found that appellant suffered a five percent physi-

cal impairment rating to the body as a whole and was entitled to a ten percent wage-loss disability. In its opinion and order filed October 31, 1995, the full Commission affirmed the decision of the ALJ. The Commission found that the evidence established that appellant suffered from "a small degree of degenerative disc disease which became symptomatic as a result of the work-related injury," but found that "there [was] no evidence of a herniated nucleus pulposus or of any nerve root involvement." Appellant appealed, and we, in an unpublished opinion, affirmed the decision of the Commission in *Cox v. Klipsch & Assoc.*, CA 96-160, slip op. (Ark. App. November 6, 1996).

Appellant was initially treated for her compensable injury under the care of Dr. Steven Clark from the period of September 27, 1991, through at least October 31, 1991. Dr. Clark diagnosed appellant with lumbar strain and treated appellant's symptoms with steroid injections, back adjustments, and anti-inflammatory injections. Dr. Clark released appellant to perform light duty work on October 7, 1991. Appellant continued to work until July of 1992, at which time she quit due to complaints of severe headaches which she contributed to steroid injections or chemicals used by the appellee. In February 1992, appellant began receiving conservative treatment from appellee's designated medical provider, Dr. George Finley, a family practitioner.

In January 1993, appellant saw Dr. Norris Knight, an orthopedic physician. Under Dr. Knight's care, appellant underwent an MRI and CT of her lumbar spine. Dr. Knight's examination of appellant revealed a full range of motion and no neurological deficits. An x-ray revealed minor scoliosis and minor degenerative disc disease. On May 18, 1993, Dr. Knight diagnosed appellant with degenerative disc disease at L-4 and L-5 with mild posterior bulging of the L-4 disc. Appellant was last seen by Dr. Knight on June 8, 1993, when he opined that appellant was not an operative candidate because she "has no clear extrinsic or root compression."

On June 15, 1993, pursuant to Act 444 of 1983, appellant served advance written notice to appellee stating her request to change to a chiropractic physician. After apparent approval of the change by appellee, Dr. David Volentine became appellant's primary physician in June of 1993. On September 30, 1993, appellant was evaluated by Dr. Jim Moore, a Little Rock neurosurgeon. Dr.

Moore's medical report dated September 30, 1993, reflected the following:

> The studies reviewed, the MRI shows only a very slight amount of disk prominence with some minimal degeneration. Apparently, Dr. Knight, proceeded with the myelogram and CT in view of her persisted complaints. The myelogram itself as reviewed does show quite of a bit of bulge or prominence at the L4-5 level, however unfortunately flexion extension films were not done, and I would suspect that this patient likely would have effacement or flattening of bulge if flexion had been done, as I do not see much at all if anything on the contrasted CT that was brought along with her today along with the other studies for review, however, the radiologist does suggest that there is some bulging present here, but certainly it is quite minimal.

Dr. Moore agreed with Dr. Knight that appellant was not a candidate for any surgical treatment and opined that appellant was at the end of her healing period.

Thereafter, appellant was referred by Dr. Volentine to Dr. Robert Abraham, who examined appellant on October 18, 1993. Dr. Abraham reported that a lumbar MRI revealed "diffuse bulging disc at L4-5" and assessed appellant with right lumbar radiculopathy. He further reported that appellant "may be helped by percutaneous diskectomy." On December 15, 1993, Dr. Abraham gave appellant a pre-operative diagnosis of right L4-5 herniated nucleus pulposus. On that same date, appellant underwent a percutaneous diskectomy with percutaneous discogram under the care of Dr. Abraham. Dr. Abraham treated appellant through June 1994. During that time, Dr. Abraham recommended that appellant receive physical therapy for a trial period under the care of Dr. Volentine. However, at that time, Dr. Volentine had failing health, and, therefore, appellant was referred to Dr. Chris Primeaux, a Hope chiropractic physician. Appellant received chiropractic treatment from Dr. Primeaux through at least March 6, 1995.

In 1998, appellant sought additional benefits for surgical treatment she received under the care of Dr. Abraham. Appellant contended that the treatment she received by Dr. Abraham was reasonable, necessary, and related to her compensable injury. Following a hearing held February 17, 1999, the ALJ agreed and awarded all

reasonably and necessary medical benefits related to the compensable injury, including treatment under the care of Dr. Abraham.

In reversing the ALJ, the Commission found that the treatment rendered by Dr. Abraham, especially the percutaneous diskectomy performed by Dr. Abraham, was neither reasonable, necessary, nor related to the compensable injury. It found that the surgery performed by Dr. Abraham was of questionable benefit to appellant and that none of appellant's treating physicians, except Dr. Abraham, recommended surgery for appellant's 1991 lumbar strain injury.

■ In a workers' compensation appeal, the appellate court views the evidence in a light most favorable to the Workers' Compensation Commission's decision and upholds that decision if it is supported by substantial evidence. *Maxey v. Tyson Foods, Inc.*, 341 Ark. 306, 18 S.W.3d 328 (2000). Substantial evidence is that evidence which a reasonable person might accept as adequate to support a conclusion. *Campbell v. Randal Tyler Ford Mercury*, 70 Ark. App. 35, 13 S.W.3d 916 (2000). The appellate court will not reverse the Commission's decision unless it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Woodall v. Hunnicutt Constr.*, 340 Ark. 377, 12 S.W.3d 630 (2000). The determination of the credibility and weight to be given a witness's testimony is within the sole province of the Workers' Compensation Commission. *American Greetings Corp. v. Garey*, 61 Ark. App. 18, 963 S.W.2d 613 (1998). The authority of the Workers' Compensation Commission to resolve conflicting evidence also extends to medical testimony. *Maverick Transp. v. Buzzard*, 69 Ark. App. 128, 10 S.W.3d 467 (2000). The Commission is entitled to review the basis for a doctor's opinion in deciding the weight and credibility of the opinion and medical evidence. *Id.*

■ Arkansas Code Annotated section 11-9-508(a) (Repl. 1996) requires employers to provide such medical services as may be reasonably necessary in connection with the employee's injury. *American Greetings Corp. v. Garey, supra.* Whether a medical procedure or device is reasonable and necessary treatment is a question of fact to be decided by the Commission. *Air Compressor Equipment v. Sword*, 69 Ark. App. 162, 11 S.W.3d 1 (2000).

For reversal, appellant contends that the Commission's decision is not supported by substantial evidence. Specifically, she argues that the evidence was insufficient to find that her treatment under Dr. Robert Abraham was not reasonable and necessary with respect to her compensable injury. We do not agree.

The full Commission noted in its October 31, 1995, order and opinion, that "the evidence establishes that [appellant] suffers from a small degree of degenerative disc disease which became symptomatic as a result of the work-related injury," and that "there is no evidence of a herniated nucleus pulposus or of any nerve root involvement." This evidence is directly contrary to Dr. Abraham's preoperative diagnosis of right L4-5 herniated nucleus pulposus on December 15, 1993, which the Commission was entitled to weigh. Subsequent to Dr. Moore's evaluation of appellant in September of 1993, Dr. Moore agreed with Dr. Knight that appellant was not a surgical candidate, and opined that appellant was at the end of her healing period. Despite the opinions of Drs. Moore and Knight, Dr. Abraham evaluated appellant on October 18, 1993, and gave an assessment of right lumbar radiculopathy, which "may be helped" by percutaneous diskectomy. Following the surgery, Dr. Abraham stated that appellant was "doing about the same" and that she still had pain "in the lower lumbar region bilaterally." Dr. Abraham opined in a letter dated April 27, 1994, that "the patient's [claimant's] healing period in my estimation should have plateaued at approximately September 1992." Furthermore, the Commission noted that following the additional surgery, appellant testified that she was unable to return to work, but was able to stand on Thanksgiving to prepare a pot of sweet potatoes. However, the Commission stated that appellant claimed to be permanently and totally disabled, contradicting her contention that she benefitted from the surgery. Postsurgical improvement is a proper consideration in determining whether surgery was reasonable and necessary. *Winslow v. D & B Mech. Contrs.*, 69 Ark. App. 285, 13 S.W.3d 180 (2000). Based on this record where no postsurgical improvement took place and where the Commission gave little weight to Dr. Abraham's opinion, we cannot say that the Commission erred in finding that appellant's surgical treatment by Dr. Abraham was not reasonable and necessary in relation to her compensable injury.

Affirmed.

PITTMAN, BIRD, and KOONCE, JJ., agree.

STROUD, and ROAF, JJ., dissent.

JOHN F. STROUD, JR., Judge, dissenting. In finding that the treatment and surgery rendered by Dr. Abraham was neither reasonable, necessary, nor related to appellant's compensable injury, the Workers' Compensation Commission found that his opinion regarding her need for such care was entitled to less weight than the opinions of Dr. Knight and Dr. Moore stating that she was not a surgical candidate. Those two doctors, however, examined appellant in June and September 1993, before Dr. Abraham saw her in October of that year, and, as the dissenting commissioner noted, their opinions appear to be based on their interpretation of diagnostic studies as failing to show clear, operable abnormalities. When Dr. Abraham examined appellant on October 18, 1993, he confirmed that she had a bulging disc at L4-5. He counseled her and gave her literature on a proposed discogram and percutaneous diskectomy. On December 8, 1993, he wrote that "Ms. Cox may indeed benefit from a percutaneous diskectomy in that she has a bulging disc at the L4-5 region." Dr. Abraham performed the diskectomy on December 15, 1993.

Dr. Moore did not dispute Dr. Abraham's preoperative and postoperative diagnoses of a "right L4-5 HNP (contained)." Furthermore, Dr. Moore's letter to appellee's attorney in 1998 stated that "[p]ercutaneous diskectomy is recognized as an effective treatment for contained discs of the lumbar spine" and has "an approximate 79% success rate."

As stated above, the Commission found that Dr. Abraham's opinion was entitled to less weight than those of Dr. Knight and Dr. Moore. If all three doctors had been stating their opinions as to whether or not claimant was a surgical candidate, I would not be writing this dissent. The Commission clearly has the right to determine the weight to give differing medical opinions with regard to the same set of facts. I do not view the medical testimony as inapposite, but simply as different opinions rendered at different times. Appellant correctly notes that the issue before the Commission was not whether she was a candidate for surgery at a future date, an issue addressed by Doctors Moore and Knight, but whether the surgery later rendered by Dr. Abraham was reasonable and necessary, which I view as a different decision. In light of the medical evidence, including the advantage of Dr. Abraham's post-

operative diagnosis, I do not think that reasonable minds could conclude that the surgery was not reasonable and necessary. .

Postsurgical improvement is a proper consideration in determining whether surgery was reasonable and necessary. *Winslow v. D & B Mech. Contrs.*, 69 Ark. App. 285, 13 S.W.3d 180 (2000). In *Winslow*, which the majority cites, the claimant stated that he did not benefit from a surgery, and even the surgeon who performed the procedure believed that it would not be effective; this court affirmed the Commission's finding that the surgery was not reasonably necessary for treatment of the compensable injury. Here, the situation is quite different. Appellant's surgeon suggested the surgery as an effective means of relieving her symptoms, and a doctor who had not thought her to be a surgical candidate admitted that not only was the surgery appropriate for the diagnosis rendered by her surgeon but that it was known to be effective in seventy-nine percent of the cases.

Arkansas Code Annotated § 11-9-508 (Repl. 1996) requires the employer to promptly provide for an injured employee such medical and surgical services as may be reasonably necessary in connection with the injury received. In my view, a person is entitled to have a fair chance for an improved life after an injury suffered in the work place even though the result may be short of recovery that allows a return to work. I revile the majority's view that surgery giving the patient the ability to again cook in her kitchen is insignificant. The fact that postoperative improvement was slight should not trump a finding that the percutaneous diskectomy was reasonably necessary for her disc problem. For the very same reasons, appellant's subsequent claim of permanent and total disability does not conflict with her testimony regarding some improvement.

I would find that there is no substantial basis in the medical records or the testimony for the Commission's decision that treatment rendered by Dr. Abraham, including surgery performed, was not reasonable and necessary.

I am authorized to say that Judge ROAF joins me in this dissent.