2009 Ark. App. 772

**POTLATCH CORPORATION,**
**Management Claims So-**
**lutions, Appellants,**

v.

**James Norman WORD and Second**
**Injury Fund, Appellees.**

**No. CA 09–536.**

Court of Appeals of Arkansas.

Nov. 18, 2009.

Cross, Gunter, Witherspoon & Galchus, P.C., by: Jimmy C. Cline, Little Rock, for appellants.

Gary Davis, Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

This appeal follows the March 4, 2009 decision of the Workers' Compensation Commission that reversed the portion of the April 10, 2008 opinion of the Administrative Law Judge that found that appellee had failed to prove that he suffered a compensable injury to his left and right shoulders. The Commission instead found that appellee proved that he had sustained a compensable injury to his left shoulder and that he was entitled to reasonably necessary medical treatment and related temporary-total-disability benefits. Appellants' sole argument on appeal is that the Commission's decision is not supported by substantial evidence. We affirm the Commission's finding regarding compensability, but remand for further consideration regarding appellant-employer's entitlement to an offset for temporary-total-disability benefits received by appellee related to the left-shoulder injury.

Appellee is sixty-four years of age (DOB June 29, 1945). He attended secondary school through the tenth grade and subsequently obtained his GED while working for appellant-employer Potlatch Corporation. He began working there in 1978 and worked for appellant-employer for approximately twenty-nine years. At the time of his injury, appellee was working as a maintenance worker.

On either July 29, 2005, or August 11, 2005,[1] appellee allegedly injured his shoulders when a door-hanging mechanism to a kiln fell as he and his co-workers were attempting to put the door back on track. The incident was witnessed by three co-workers and immediately reported to appellee's supervisor. Subsequently, a written report of the incident was completed, but appellee did not report any continuing problems with his shoulders to appellant-employer. After the incident, appellee continued to work until his scheduled vacation on or about November 2, 2005, although testimony indicated that he did so with some difficulty.

Appellee initially sought medical treatment for his left shoulder with his family physician, Dr. James Marsh, on November 15, 2005, utilizing his personal medical insurance. He was subsequently referred to Dr. Jason Stewart, an orthopedic surgeon. Dr. Stewart saw appellee on November 23, 2005, at which time he recommended an MRI of the left shoulder. The MRI scan revealed a rotator-cuff tear and acromio-clavicular arthritis with subacromial-impingement syndrome. Dr. Stewart performed rotator-cuff surgery on appellee's left shoulder on December 13, 2005.

Appellee returned for a post-operative evaluation on December 30, 2005. At that time, appellee reported elbow problems, although he acknowledged they had preexisted the surgery. He was given anti-inflammatory medication for arthritis in his elbow and directed to return in one month. Appellee returned in February and March with reports that he was doing well, and he was released to return to full-

---

1. Although the claimant initially contended that the accident occurred on August 11, 2005, a Potlatch Investigation Report for Accident/Incident was actually prepared on July 29, 2005.

duty work with no restrictions on March 15, 2006. Appellee returned to work performing his regular duties.

On October 25, 2006, appellee sought additional medical treatment from Dr. Stewart with complaints of right-shoulder pain similar to the symptoms and problems he previously had with his left shoulder. He was referred for an MRI, which revealed a massive rotator-cuff tear with gleneral-humeral-arthritic change, AC joint arthritis, and impingement. On December 27, 2006, appellee underwent a right-shoulder hemiarthroplasty for rotator-cuff arthropathy.

Appellee returned for post-operative evaluations on January 10, 2007, and on February 14, 2007, and both times reported doing very well. Dr. Stewart assigned appellee a five-percent whole-person-impairment rating based on his loss of range-of-motion in the upper extremity. He was prescribed six additional weeks of physical therapy.

In his deposition and at the hearing before the ALJ, appellee testified that he had not returned to work. He drew six months of short-term disability from appellant-employer until June 2007. He testified that he retired in June of 2007, at the age of sixty-two, and began drawing retirement benefits from appellant-employer. He further testified that he had been notified that he was approved for Social Security disability benefits in August 2007.

Appellee testified that he did not seek medical treatment immediately because he thought his shoulders would get better. He testified that he did not report the injury as work related because he did not want to ruin his crew's safety record and believed his claim would be denied due to his delay based on statements made to him by a co-worker.

On cross-examination, appellee admitted that he had gone deer hunting on November 12, 2005, and had shot a deer using his left shoulder. He admitted that he had sought medical treatment for other problems on four separate visits between August 2005 and November 2005 and did not mention a work-related accident or complaints of shoulder pain. He admitted that he continued to work and that he had told both his supervisor, Jerry Forrest, and the safety coordinator, Raymond Culp, that he did not need to see a doctor after the incident.

Three co-workers of appellee, Ricky Howard, Jimmy Barrett, and Jim Grice, testified that they were working with him and had witnessed the incident in 2005 involving the door to the kiln. Although their descriptions of the event differed in exact details of how far the door fell, their testimony consistently corroborated appellee's testimony that he complained of pain in both shoulders immediately following the incident. They all testified that they encouraged appellee to report the injury and that they assisted him in performing his job duties and continued to urge him to seek treatment.

Appellee's supervisor, Jerry Forrest, testified that he first observed appellee in pain sitting on a bucket and was told by appellee that the door fell and jerked his arm. He testified that he filled out an incident report based on the statements of appellee. He observed appellee continuing to have problems with his shoulders during the months after the incident. He explained that if appellee had reported problems with his right shoulder, he would have included the problems in the report. He testified that he asked appellee if he needed treatment on several occasions and that appellee denied the need for treatment. He testified that although he was told that appellee was having surgery on

his right shoulder, he was not told that it was work related.

Mr. Culp, the safety coordinator, testified that he talked with appellee on the Monday following the incident. Appellee told him that he had jerked his left shoulder, but that when he asked appellee if he needed medical attention, appellee said "no." He testified that he asked appellee if he needed medical attention for a week to ten days when he made daily rounds, and each time he was told by appellee that he did not want to see a doctor. Mr. Culp recalled that after ten days appellee had improved and was no longer complaining of his symptoms. Mr. Culp was subsequently made aware of appellee's left-shoulder surgery when appellee's name was on a list of people on short-term disability. Mr. Culp testified that he did not believe the surgery was work related since it was four months later and appellee did not report it as related to the accident. He first learned that appellee was contending that his need for treatment was work related when Mr. Culp received the workers' compensation claim in March of 2007.

After the hearing before the ALJ on January 11, 2008, the ALJ issued her opinion in favor of appellants on April 10, 2008, finding that appellee failed to prove by a preponderance of the evidence that he sustained compensable specific-incident injuries to his right and left shoulders and upper extremities. Appellee filed a timely appeal with the Commission, and on March 4, 2009, the Commission reversed the ALJ's opinion in part, finding that appellee proved that (1) he sustained a compensable injury to his left shoulder; (2) medical treatment, including surgery on his left shoulder, was reasonable and necessary; (3) he is entitled to temporary-total-disability benefits from November 2, 2005, until March 17, 2006.

Appellants filed a notice of appeal on March 11, 2009, with the Commission. On April 2, 2009, appellees filed a motion to quash the appeal, or in the alternative, a notice of appeal, based on appellants' failing to properly file the appeal with the Arkansas Court of Appeals. On April 6, 2009, appellants filed a response to appellee's motion to quash, and appellees filed a reply to that response on April 15, 2009. On May 4, 2009, the Commission entered an order denying appellee's motion to quash, recognizing appellants' March 10, 2009 notice of appeal as a notice "from" the Commission "to" the Arkansas Court of Appeals. The order also recognized appellees' April 2, 2009 filing as a timely notice of cross-appeal. From our review of the record, it does not appear that appellees filed a notice of appeal from the May 4, 2009 order, so we need not address the issue and reach the merits of the appeal.

*Standard of Review*

In appeals involving claims for workers' compensation, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *See Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.*, 366 Ark. 297, 235 S.W.3d 499 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclu-

sions arrived at by the Commission. *Dorris v. Townsends of Ark., Inc.*, 93 Ark. App. 208, 218 S.W.3d 351 (2005).

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Ark. Dep't of Health*, 343 Ark. 255, 33 S.W.3d 151 (2000). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of appellee or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Arbaugh v. AG Processing, Inc.*, 360 Ark. 491, 202 S.W.3d 519 (2005).

## Discussion

■ Arkansas Code Annotated section 11–9–102(4)(A)(i) (Repl.2002) defines compensable injury as follows:

(i) An accidental injury causing internal or external physical harm to the body ... arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence.

A compensable injury must be established by medical evidence supported by objective findings. Ark.Code Ann. § 11–9–102(4)(D). "Objective findings" are those findings which cannot come under the voluntary control of the patient. Ark.Code Ann. § 11–9–102(16).

■ The claimant's burden of proof shall be a preponderance of the evidence. Ark.Code Ann. § 11–9–102(4)(E)(i). Preponderance of the evidence means evidence of greater convincing force and implies an overbalancing in weight. *See Barre v. Hoffman*, 2009 Ark. 373, 326 S.W.3d 415.

Appellants argue that appellee failed to prove by a preponderance of the evidence that his injuries arose out of and in the course of employment or that they were caused by a specific incident that is identifiable by time and place of occurrence. *See* Ark.Code Ann. § 11–9–102(4)(A). They cite *Mikel v. Engineered Specialty Plastics*, 56 Ark. App. 126, 938 S.W.2d 876 (1997), for the proposition that if appellee fails to prove even one of the statutory requirements contained therein, his claim must be denied.

The majority of appellants' argument focuses on the credibility of the witnesses. Appellants state that the Commission relied heavily upon testimony from appellee and the three co-worker eyewitnesses. They claim that while it is the Commission's duty to reconcile conflicting testimony, there is significant conflicting evidence existing between the witnesses, as well as within appellee's own testimony. All of the witnesses, however, discuss the same incident in which a door-hanging mechanism to a kiln fell as appellee and his co-workers were attempting to put the door back on track. The discrepancies in their testimony deal primarily with how far the door hanger fell—from a few inches up to three-and-a-half feet-or if the door had already fallen and its leaning against appellee caused the injury. Appellants point to testimony that appellee might or might not have been on a ladder, and questions as to whether his arms were raised up over his head. While they are correct that none of the testimony from witnesses Ricky Howard, Jimmy Barrett, or Jim Grice exactly mirrors appellee's testimony—and in pointing out inconsistencies between testimony at the hearing and previ-

ously signed statements—we hold that these were issues of credibility properly weighed by the Commission.

Any alleged inconsistencies in the witnesses' testimony have been examined by the Commission and translated into findings of fact. The Commission ruled on the credibility issue—in appellee's favor. All three of his co-workers verified that appellee's injuries were sustained when the kiln-door mechanism they were working with fell. Mr. Forrest arrived shortly thereafter, noticed that appellee was injured and in pain, and wrote a contemporaneous report to that effect. Management officials Mr. Forrest and Mr. Culp acknowledged that they knew appellee had been hurt, and his co-workers Mr. Howard and Mr. Grice verified that he was subsequently unable to perform his work activities without obvious pain. Additionally, Dr. Stewart's recorded history is consistent with this account, as he acknowledged that appellee presented "with four months of left shoulder pain. [H]e was catching a door that was falling and it jerked his shoulder." The injury required surgery, which Dr. Stewart performed on December 13, 2005.

In their reply brief, appellants cite *Patterson v. Frito Lay, Inc.*, 66 Ark. App. 159, 992 S.W.2d 130 (1999), for the proposition that the Commission must be able to clearly state the reasons for its determination of credibility, especially when that determination is contrary to the findings of the ALJ, who actually observed the witnesses. They contend that the Commission failed in this respect and arbitrarily disregarded Dr. Stewart's medical opinion that the left-shoulder injury sustained in 2005 as well as the resulting medical treatment was not work related. The ALJ viewed that as a primary reason to deny appellee's claim, yet appellants claim that the Commission failed to adequately address its reasons for making a contrary determination. In *Patterson,* the court stated that although benefits are not always denied to a claimant who has been untruthful, a claimant would obviously not be able to meet his burden of proof if he was untruthful regarding one of the essential elements of his claim. Appellants argue that is exactly what occurred here, and that the Commission erred in reversing the ALJ's opinion with respect to the left-shoulder injury. We disagree. Although appellants point out that both appellee and Dr. Stewart acknowledged that the injury was not work related by their respective signatures on the short-term-disability forms that were filed, the Commission could, and did, discern that piece of evidence from the contradictory medical-history evidence, which is consistent with the testimony of appellee and his coworkers.

Additionally, appellants note that appellee sought medical treatment on five separate occasions during that time period but never informed his physicians about the incident, the resulting shoulder pain, or the difficulty in performing his duties. Appellants maintain that the only logical explanation is that appellee was not in pain until he visited Dr. Stewart in November after another isolated, non-work-related incident occurred—specifically that he injured his shoulder while hunting.

Appellants detail appellee's testimony regarding his mid-November 2005 hunting trip, including his explanation that he took off three weeks to go to deer camp even though he could not shoot a gun. Appellee initially stated, rather emphatically, that he could not shoot a gun at that time, and that he primarily rode the roads, cooked for the camp, and took pictures when the hunters returned with a kill. Appellants refer to an exhibit they provided in the form of a letter from the Arkansas Game and Fish Commission in response to a

FOIA request that indicated that appellee did, in fact, shoot and tag a deer on November 12, 2005. They challenge appellee's response that he "forgot" about it, when he was able to provide detailed information about other aspects of the hunting trip. Within three days of shooting the deer, on November 15, 2005, appellee visited Dr. Marsh and requested a referral to Dr. Stewart for left-shoulder pain. He saw Dr. Stewart on November 23, 2005. Appellants find it ironic that it was not until after the hunting trip that appellee sought and received medical treatment for the alleged injury that occurred in August. Again, this argument is a continuation of appellants' attack on the credibility of the witnesses. These contradictions in the evidence were within the Commission's province to reconcile in its determination of the true facts. *Patterson, supra.* The Commission may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief, and we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *See Arbaugh, supra.*

Appellants argue that appellee knew his injury was not compensable because on December 15, 2005, appellee filed for short-term-disability benefits related to his left-shoulder injury, prior to filing for workers' compensation benefits. Appellants contend that this sequence of events demonstrates that appellee did not think that his left-shoulder problems were work related. He was required to pay his $300–$600 annual deductible, plus $25–$30 co-pays for each visit, plus medication charges. They assert that, surely, had he been injured at work, he would have filed a workers' compensation claim rather than unnecessarily absorb all those charges himself. Appellants refer to appellee's testimony that he finally decided to file a claim "for money" once the bills became

more than he could handle. He waited until his short-term-disability benefits ran out and then recognized another way he could attempt to pay for the medical treatment his personal insurance did not cover. We decline to engage in speculation as to appellee's motivation, but note that this evidence was before the Commission as part of its analysis of the evidence and determination of the compensability of appellee's claim.

Finally, appellant-employer argues that if either shoulder injury is found to be compensable, they are entitled to an offset for temporary-total-disability benefits received by appellee. Any benefits payable to an injured worker shall be reduced dollar-for-dollar the amount of benefits received for the same medical services or period of disability. *See* Ark.Code Ann. § 11–9–411(a)(1) (Repl.2002). Consequently, appellee is not permitted to be put in a better position than had he not sustained a compensable injury. Appellants urge that, because we are affirming the finding of compensability for appellee's left shoulder, they are entitled to an offset for any benefits he received in short-term-disability benefits with regard to that injury. Appellee does not address this issue in his brief, and we have determined that we do not have adequate evidence before us to make this determination. Accordingly, we remand to the Commission for further proceedings regarding appellant-employer's entitlement to an offset.

Affirmed; remanded for further consideration.

GLOVER and BROWN, JJ., agree.