ITT/HIGBIE MANUFACTURING *v.* Idoline GILLIAM

CA 90-308          807 S.W.2d 44

Court of Appeals of Arkansas
Division II
Opinion delivered April 10, 1991

*Penix, Penix & Lusby*, by: *Bill Penix*, for appellant.

*Mills and Patterson*, by: *William P. Mills*, for appellee.

JAMES R. COOPER, Judge. The appellant in this worker's compensation case was the appellee's employer, and it accepted an October 10, 1986 injury as compensable and further accepted a twenty-percent (20%) permanent partial disability and paid benefits accordingly. However, the appellant controverted any benefits in excess of twenty-percent (20%) permanent partial disability and argued that the appellee was not permanently and totally disabled as a result of her October 10, 1986, injury. A hearing was held before an administrative law judge (ALJ) who noted that the appellant controverted benefits in excess of 20% permanent partial disability, determined that the appellee is permanently and totally disabled, and ordered the appellant to pay all reasonable hospital and medical expenses arising out of the October 10, 1986, injury. The appellant appealed this decision to the full Commission, which adopted the administrative law judge's opinion. From the Commission's decision, comes this appeal.

On appeal, the employer raises three points for reversal: first, that the Commission failed to make sufficiently detailed findings to allow for a meaningful review by this Court; second, that there was no substantial evidence to support the findings of the administrative law judge which were adopted by the full Commission, and that the ALJ incorrectly shifted the burden of proof to the employer; and third, that the appellee was offered but refused suitable light work and therefore was not entitled to benefits in excess of her twenty-percent (20%) permanent partial impairment. We disagree with the employer's arguments and we affirm.

As to the argument that the Commission's findings were insufficient to permit meaningful review by this Court, we simply do not find this to be the case. In the case at bar the Commission issued a brief opinion which set out the specific findings of the administrative law judge, and affirmed and adopted the administrative law judge's opinion as the decision of the Commission. Under Arkansas Law, the Commission is

permitted to adopt the administrative law judge's decision. *See Odom* v. *Tosco Corp.*, 12 Ark. App. 196, 672 S.W.2d 915 (1984). Moreover, in so doing the Commission makes the findings and conclusions of the administrative law judge also the findings and conclusions of the Commission. *See Lybrand* v. *Arkansas Oak Flooring Co. and Liberty Mutual Insurance Co.*, 266 Ark. 946, 588 S.W.2d 449 (1979). Therefore, for purposes of our review, we consider both the administrative law judge's order and the Commission's order. In this case the administrative law judge went into great detail in his opinion and set out the circumstances of the case and the evidence supporting his findings; therefore we find that the findings of fact made by the administrative law judge and adopted by the Commission are sufficiently detailed to enable this Court to determine whether or not the Commission's findings are supported by substantial evidence.

█ The appellant asks us to overrule *St. Vincent Infirmary* v. *Carpenter*, 268 Ark. 951, 597 S.W.2d 129 (Ark. App. 1980). It argues that the *St. Vincent* decision should not be allowed to stand because it permits the Commission to "rubber stamp" the administrative law judge's decision. We do not agree. In *St. Vincent*, this Court held that the Commission met its obligation to find the facts by adopting the administrative law judge's decision and that, by adopting the administrative law judge's decision, the Commission made sufficient findings for purposes of our review. We are mindful of the Commission's duty to conduct a *de novo* review on the basis of the record as a whole when deciding any issue. Ark. Code Ann. § 11-9-704 (1987). However, after conducting such a review, the Commission may adopt the administrative law judge's findings which are identical to those arrived at by the Commission. *See* e.g. *Southwest Pipe and Supply and Ins. Co. of North America* v. *Hoover*, 13 Ark. App. 144, 680 S.W.2d 723 (1983), *see also Odom, supra.* We find no merit in the appellant's argument, and we decline to overrule *St. Vincent, supra.*

█ In its next argument the appellant contends, first, that there is no substantial evidence to support the Commission's decision, and second, that the burden of proof was improperly shifted to the employer. In determining the sufficiency of the evidence to sustain the findings of the Workers' Compensation Commission, we review the evidence in the light most favorable to

the Commission's findings, and we must affirm if there is any substantial evidence to support these findings. *Central Maloney, Inc.* v. *York*, 10 Ark. App. 254, 663 S.W.2d 196 (1984). We may reverse the Commission's decision only when we are convinced that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission. *Snow* v. *Alcoa*, 15 Ark. App. 205, 691 S.W.2d 194 (1985).

Viewed in the light most favorable to the Commission's findings, the record reveals that the claimant was fifty-nine years old at the time of the accident; that she had worked for the employer for fourteen years; that she had not been diagnosed as having osteoporosis until her work-related accident; and that, several weeks following her accident at work, there was a subsequent incident in which her back popped and she experienced pain and muscle spasms similar to that which she had experienced after her October 10, 1986, fall.

On October 21, 1986, the claimant sought medical attention and, at the request of Dr. Joseph, the company doctor and the claimant's treating physician, x-rays of the claimant's back were taken by Dr. Elliot, a radiologist. These x-rays did not reveal a fracture but did show osteoporotic change. Dr. Joseph noted, however, that following an incident at home on November 1, 1986, while the claimant was sitting on a commode, she felt a pop in her back and experienced pain and muscle spasms and that she was seen in an emergency room where repeat lumbar x-rays revealed a questionable slight compression fracture. The x-rays were followed up with a CT scan which confirmed the fracture.

The claimant was also seen by Dr. Weber, who noted in this medical report dated June 12, 1987 that he x-rayed the claimant and found compression fractures and severe osteoporosis. He stated that because of the fractures, her age, and her osteoporosis, she was 100% impaired but that if all she had were the fractures incurred in the line of her normal work, her impairment would be ten to twenty percent to the body as a whole, and that a rate of twenty percent to the body as a whole could be attributed to her work injury.

Medical records from Dr. Staggs, who first examined the claimant on September 27, 1988, corroborate the diagnosis of Drs. Joseph and Weber. Specifically, Dr. Staggs states in his

medical report that the claimant's x-rays confirm severe osteoporosis and compression fractures, that the claimant has been at 100% disability since the diagnosis, and that she will never improve. He stated that, because of the pain, he saw no likelihood of her being gainfully employed.

The claimant was also seen by Dr. Jordan on February 8 and April 10, 1989. He concluded that the compression fractures were secondary to the osteoporosis, that she was unable to do any appreciable work at that time because of these problems, and that he did not anticipate that she would be able to return to any productive activity.

The only contrary medical evidence is an entry by Dr. Jordan, dated April 10, 1989. He stated that there was inadequate medical evidence to link the fractures or the claimant's present condition to the October 10, 1986 fall.

The Commission has the duty of weighing medical evidence as it does any other evidence and, if the evidence is conflicting, the resolution of the conflict is a question of fact for the Commission. *Mack* v. *Tyson Foods, Inc.*, 28 Ark. App. 229, 771 S.W.2d 794 (1989). Moreover, the testimony of medical experts is an aid to the Commission in its duty to resolve issues of fact, and it has the duty to use its expertise and experience in translating that testimony into findings of fact. *C.J. Horner Co.* v. *Stringfellow*, 14 Ark. App. 138, 685 S.W.2d 533 (1985). As noted earlier, we may reverse the Commission's decision only when we are convinced that fair-minded persons with the same facts before them could not have reached the same conclusion arrived at by the Commission, *Snow, supra,* and in this case we cannot so conclude. We hold that there is substantial evidence to support the Commission's finding that the claimant proved by a preponderance of the evidence that she is permanently and totally disabled as a result of her injury arising from her work-related accident on October 10, 1986.

As to the argument that the administrative law judge incorrectly shifted the burden of proof to the employer, we find that this was not done. The opinion sets forth the employer's contention and then states that "[t]he medical evidence when read in its entirety does not support that conclusion." This statement is followed by the administrative law judge's findings

with regard to the medical evidence after which he concludes that "the claimant has proven by a preponderance of the evidence that she is permanently and totally disabled as a result of her injury in the course and scope of her employment on October 10, 1986." We read these as findings indicating that the administrative law judge found that the preponderance of the evidence showed a causal connection between the claimant's fall at work and the claimant's compression fractures and we perceive no shift in the burden of proof.

The appellant next argues that the claimant was offered suitable work which she refused and that her award should not exceed twenty percent permanent partial impairment. The appellant cites Ark. Code Ann. § 11-9-526 (1987) as support for its contention. This statute provides that "[i]f any injured employee refuses employment suitable to his capacity offered to or procured for him, he shall not be entitled to any compensation during the continuance of the refusal, unless in the opinion of the commission, the refusal is justifiable." In this case it is undisputed that the job specifications were designed under the supervision of Dr. Joseph, whose work restrictions allowed the claimant to lift and carry twenty pounds frequently and thirty pounds occasionally. However, the appellant admits that the job was formulated without consideration of Dr. Weber's report which stated that the claimant was 100% disabled. We think that this constitutes substantial evidence from which the Commission could determine that the claimant's refusal of the job was justifiable because the job was unsuitable. Furthermore, Ark. Code Ann. § 11-9-526 (1987) provides that a claimant who unjustifiably refuses suitable work would not be entitled to *any compensation.* (Emphasis added.) Here the appellant argues that the claimant is not entitled to benefits in excess of her permanent partial disability of 20 percent to the body as a whole and the controlling authority cited for this argument is Ark. Code Ann. § 11-9-522(b) (1987) which states:

> (b)   In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably

expected to affect his future earning capacity. However, so long as an employee, subsequent to his injury, has returned to work, has obtained other employment, or has a bona fide and reasonably obtainable offer to be employed at wages equal to or greater than his average weekly wage at the time of the accident, he shall not be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by a preponderance of the medical testimony and evidence.

Under these circumstances we do not think that the job offered to the claimant, disregarding the question of whether or not she received the offer, is reasonably obtainable in light of the job specifications as we have previously discussed.

Affirmed.

MAYFIELD and ROGERS, JJ., agree.