DEATH & PERMANENT TOTAL DISABILITY
TRUST FUND *v.* Eugene BRANUM,
Employee Service America Corporation, and
Wausau Insurance Company, Carrier

CA 02-1294                                    107 S.W.3d 876

Court of Appeals of Arkansas
Division I
Opinion delivered May 28, 2003

*Terry Pence* and *David L. Pake*, for appellant.

*Friday, Eldredge & Clark*, by: *Guy Alton Wade*, for appellees.

OLLY NEAL, Judge. On March 1, 1995, Eugene Branum was killed while in the course and scope of his employment with his employer, Service America Corporation. A hearing was held on February 25, 1997, to determine the appropriate beneficiaries of death benefits and their benefit amounts. The adminis-

trative law judge determined that Beverly Branum, Eugene Branum's widow, her two children, Kevin Bunn and Shawn Bunn, and the deceased's children from a previous marriage, Jeffrey Allen Branum, Jeannie Marie Branum, and Terry Lynn Branum (now McClain), were wholly and actually dependent upon the deceased at the time of his death. Although she was married and no longer a full-time student under the age of twenty-five, Terri Lynn McClain was determined to be wholly and actually dependent upon the deceased due to mental incapacity.

It is undisputed that appellant, Death & Permanent Total Disability Fund (Fund), was not in attendance at this hearing. It argues that it received no notice of any proceedings until it was served with a copy of the ALJ's opinion that ordered benefits to be paid to all named beneficiaries. Upon receipt of the opinion, the Fund advised the attorney who represented the insurance carrier, Wausau Insurance Company, that it did not agree with the finding of dependency made on behalf of Terri Lynn Branum McClain, Jeffrey Branum, Kevin Bunn, or Sean Bunn. The Fund's letter, dated October 17, 1997, stated as follows:

> The Death and Permanent Total Disability Trust Fund has examined the information on this case and from that have taken the position that Terry Lynn (Branum) McClain was not an eligible dependent at the time of Mr. Branum's death. We have also determined that both Kevin and Sean Bunn were not wholly and actually dependent upon decedent.

However, the Fund took no further action. The Fund acknowledged receipt of a copy of the ALJ's opinion in a letter dated October 23, 2000, in which it stated:

> The Trust Fund received a courtesy copy of the March [7], 1997 opinion on this case prior to the official AR-D notification received on June 25, 1997 from Wausau. The deceased[,] by prior marriage, had either adopted children or natural children. In an "Agreed Order" dated August 30, 1991, for child custody, the deceased was given custody of two children and the ex-wife['s] two children. The order also relieved the deceased of obligation of child support as previously ordered. It is the Trust Fund's opinion that this Order eliminated the expectations of support for Terri Lynn Branum and Jeffrey Branum.

* * *

The Trust Fund has taken a position that the step-children were not wholly and actually dependent on the deceased. Several factors from our investigation support this. The claimant only earned 40% of the household income as [ ] Beverly Branum earned the majority of the income. Ms. Branum also carried claimant and her two children on her medical coverage.

* * *

A subsequent hearing was held on June 12, 2001, wherein all parties were represented by counsel. In a pre-hearing order entered on March 22, 2001, the parties stipulated that the issues to be determined were (1) whether the Fund was bound by the March 7, 1997 opinion; (2) whether Terri Lynn Branum McClain was entitled to any dependent's benefits; and (3) whether Kevin Bunn and Sean Bunn were entitled to full benefits as children of the deceased. At the hearing, the following colloquy took place:

FUND'S COUNSEL: Your Honor, our position on that is that at the — as we were not a party, we treat this as if the first hearing had never taken place, Your Honor, and under the Code, as well as the established case law, those seeking compensation benefits have the burden of proving they're entitled to them.

ALJ: Well, you forget one aspect of the hearing and, that is, whether or not you all are bound by this. That's one aspect. And I suppose the moving party on that is the respondent/employer/carrier is the moving party in regard to whether or not the Death & Permanent Total Disability Bank Fund is bound by these things and is obligated to commence the payment of benefits. You know, I am not sure that this is just another case where we just hold the prior hearing as a nullity and that the burden is on the claimants to reprove their case. That's only true if your contention holds up that you're not bound by the prior order or opinion.

| | |
|---|---|
| FUND'S COUNSEL: | And that is our position, Your Honor. |
| ALJ: | I understand that, but, I mean, that's not — that hasn't been decided. I mean, if that had been decided, then maybe we wouldn't be here again retrying this case[.] . . . |

\* \* \*

| | |
|---|---|
| FUND'S COUNSEL: | Your Honor, this case does not involve a change of status. It involves the fact that one party is being asked to pay benefits that was not mentioned at all in the previous hearing. It was not mentioned in the style of the case nor the opinion. It was not given notice. |
| ALJ: | All right. It appears, then, that you all have already decided. What you want to do is you want to go on your other deal. You want to go on the issue first. You want the issue tried and decided first, whether this prior opinion is binding against the Death & Permanent Total Disability Bank Fund? |
| CLAIMANTS' COUNSEL: | Yes. |
| ALJ: | That's what everybody wants? |
| WAUSAU'S COUNSEL: | Yes, Your Honor. . . . |
| ALJ: | Well, that's well and good, I mean, if that's what everyone wants, is an opinion first on whether or not this prior decision or whether or not this prior opinion is binding on the Fund, so be it. That's the way we'll proceed. All right. How about the Fund? What evidence do they want to put on in regard to that issue? |
| FUND'S COUNSEL: | Well, Your Honor, again I don't think the Fund has the burden of proving it's binding on the Fund when it was not a party in any way. I think the burden would be on those seeking — |

ALJ: I'm not saying it's your burden of proof. I'm just asking you if there's any proof you want to put on. Whether you've got the burden of proof or not, you've got a right to put on proof. That's one of the reasons we're here —

FUND'S COUNSEL: I understand. If you're asking about the issue —

ALJ: — is your argument that you weren't afforded an opportunity to put on proof. Now, do you want to put on any proof to support your argument that it isn't binding on you because you were deprived of putting on proof?

FUND'S COUNSEL: Our position, of course, Your Honor, is it's an issue of law and, obviously, we could cite some law to you in the form of briefs or memorandums or such as that. We did submit direct request for admissions and interrogatories to all the parties regarding that issue, whether we were put on notice. We can introduce those. But I think both claimants — at least would anticipate — would be willing to admit that they did not put the Fund on notice, and I have their sworn answers here that I can introduce.

ALJ: Introduce them. Let's get it all in that you want in on this particular issue.

FUND'S COUNSEL: Specifically, Your Honor, we will be admitting answers to request for admissions submitted to both claimants and the respondents, basically asking them to admit or deny that they had given us notice and their responses accordingly.

\* \* \*

ALJ: . . . Anything else you all want to present in the way of evidence on this limited issue?

| | |
|---|---|
| Fund's Counsel: | Not in the form of documentary evidence, Judge. We would ask to give some citations of law. |
| ALJ: | All right. . . . I would request that that be done in the way of trial briefs. |
| Fund's Counsel: | All right. |
| ALJ: | I'll allow anyone that wants to file a trial brief to file one within 15 days. Due to the nature of this proceeding and the fact that it is almost an absolute certainty, however I rule, that it will not stop with me, and the fact that these payments are coming to an end, I'll try to expedite this case as much as possible to get you a decision as soon as possible, so have your briefs in within 10 days. |

There is no evidence in the record that any party submitted a brief on this matter. Thereafter, the ALJ determined that the Fund was bound by the previous ALJ opinion and entered an order on August 14, 2001, finding that the Fund was collaterally estopped from challenging the previous opinion and barred from relitigating the issue under the doctrine of laches. The Full Commission adopted the decision of the ALJ in an opinion filed August 22, 2002, and this appeal followed.

On appeal, the Fund argues that the Commission erred in (1) holding that it is bound by the March 7, 1997 administrative-law-judge opinion, (2) applying the doctrine of collateral estoppel against it, and (3) applying the doctrine of laches against it. We affirm.

When reviewing a decision from the Workers' Compensation Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirms that decision if it is supported by substantial evidence. *Death & Permanent Total Disability Trust Fund v. Brewer,* 76 Ark. App. 348, 65 S.W.3d 463 (2002). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *See id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could

reach the result found by the Commission, the appellate court must affirm the decision. *Id.*

█ In the case at bar, the Commission issued a brief opinion which set out the specific findings of the administrative law judge, and affirmed and adopted the administrative law judge's opinion as the decision of the Commission. Under Arkansas law, the Commission is permitted to adopt the administrative law judge's decision. *See Odom v. Tosco Corp.*, 12 Ark. App. 196, 672 S.W.2d 915 (1984). Moreover, in so doing, the Commission makes the administrative law judge's findings and conclusions the findings and conclusions of the Commission. *See ITT/Higbie Mfg. v. Gilliam*, 34 Ark. App. 154, 807 S.W.2d 44 (1991). Therefore, for purposes of our review, we consider both the administrative law judge's order and the Commission's majority order.

Appropriated funds for the Death and Permanent Total Disability Trust Fund are administered for the use and benefit or at the direction of the Workers' Compensation Commission. *See* Ark. Code Ann. § 11-9-301 (Repl. 2002). Additionally, Arkansas Code Annotated section 11-9-205 (Repl. 2002) provides the Workers' Compensation Commission with the authority to make any such rules and regulations as it may find necessary. As established under the Commission, the Fund is subject to these rules and regulations. Neither party has provided the applicable rule in the record, but it is agreed upon that Rule 28 of the Workers' Compensation Rules provides:

> a) A party desiring to raise the issue of liability to the Death and Permanent Total Disability Trust Fund shall name the Trust Fund as a party by notifying the Special Funds Administrator of the Workers' Compensation Commission and all other parties no later than ninety days prior to the completion of payment of the first Fifty Thousand or Seventy-Five Thousand (depending on the applicable limit) and weekly benefits pursuant to 11-9-502(b) of the Act in writing by a form of mail requiring a signed receipt. The notice shall include a current Form A-30 to be filed with the Workers' Compensation Commission.

> b) Failure to give notice as set out above shall constitute a waiver of a claim of Death and Permanent Total Disability Fund liability until such time as the notice requirements in (a) above are met. In no event shall the employer or his carrier cease payments

for death or permanent total disability prior to compliance with the notice requirement above.

c) This rule shall not apply in claims where a certificate of acceptance has been received from the Death and Permanent Total Disability Trust Fund and there have been no changes since the date of the certification of acceptance.

■ ■ There is no requirement under the established rules that the Fund receive any notice prior to ninety days before the completion of payment of the first $75,000 and weekly benefits paid pursuant to 11-9-502(b) (Repl. 2002). Nor did any of the parties have reason to believe that any other notice was required. Under Rule 28, the only requirement is that the Fund receive notice ninety days prior to when it was calculated that the carrier would have reached its maximum liability, which was determined to be on July 7, 2001. Therefore, as substantial evidence supports the decision of the Commission, we affirm.

Affirmed.

GLADWIN and ROBBINS, JJ., agree.