2009 Ark. App. 738

**Steve CRAWFORD, Appellant,**

**v.**

**SUPERIOR INDUSTRIES and Crockett Adjustment, Inc., Appellees.**

**No. CA 09–481.**

Court of Appeals of Arkansas.

Nov. 4, 2009.

Osborne & Baker, by Ken Osborne, Fayetteville, for appellant.

Bassett Law Firm, LLP, by Curtis L. Nebben, Fayetteville, for appellees.

KAREN R. BAKER, Judge.

Appellant, Steve Crawford, appeals a decision by the Workers' Compensation Commission, affirming and adopting the Administrative Law Judge's decision finding that appellant failed to prove by a preponderance of the evidence that he is entitled to additional medical treatment by Dr. Knox or his referrals; that appellant failed to prove by a preponderance of the evidence that he was entitled to additional temporary-total-disability benefits; and that appellant failed to prove by a preponderance of the evidence that respondents were in contempt of the Commission's previous orders. Appellant presents the following arguments on appeal: that the Commission erred in finding that he failed to prove by a preponderance of the evidence that he is entitled to additional medical treatment from Dr. Knox or his referrals for his compensable injury; that the Commission erred in finding that he failed to prove by a preponderance of the evidence that he is entitled to additional temporary-total-disability benefits for his compensable neck injury; and that the Commission erred in finding that he failed to prove by a preponderance of the evi-dence that the respondents are in contempt of the Commission's previous orders. We affirm on all points.

Appellant was injured while working for appellee, Superior Industries. Appellant testified that his job title was Mold Repair and that his job duties consisted of the repetitive work of breaking down and re-pairing molds that weighed approximately 350 pounds. On October 28, 2004, appel-lant had almost completed the process of breaking down a mold, when appellant flipped it and it "twisted." Appellant felt a "pop" in his neck, and the left side of his neck and face became "stiff" and "numb." Appellant testified that after the incident, he was unable to continue work because his left-wrist issues had become intoler-able. Appellant immediately reported the injuries to his supervisor, and appellant saw Dr. Thorn that day with complaints of neck and shoulder pain. Dr. Thorn or-dered x-rays, prescribed Bextra, and re-leased appellant to go back to work with the restriction of no use of his left arm. The day after his first examination by Dr. Thorn, appellant's pain persisted. Appel-lant visited the emergency room, where he was given two injections and was pre-scribed pain medication. Appellant saw Dr. Thorn again with complaints of pain in his left shoulder. An MRI ordered by Dr. Thorn showed degenerative changes of the acromioclavicular joint without significant mass effect as well as arthritic change in bone marrow edema indicative of acute inflammation involving the acromioclavicu-lar joint. Dr. Thorn released appellant to restricted work and no use of his left arm. Appellant was ordered to wear a left-arm sling.

Dr. Thorn referred appellant to Dr. Davis for his neck and shoulder pain, and numbness in his face, left arm and left leg, as well as his carpal tunnel problems. Dr. Davis's December 17, 2004 notes reflect

that appellant had visited the emergency room the day before with complaints of pain shooting down the back of his arm and in his low back, numbness over the top of his left hand, numbness on the left side of his face, and numbness in his left leg.[1] Dr. Davis's letter also noted that he reviewed the MRI performed at the emergency room, which revealed a small annular protrusion on the left at C5–6, left-C6 neuroforaminal narrowing, and he noted that neural impingement could not be excluded. He also noted that appellant had limited abduction of his left shoulder and limited cervical range of motion. He determined that appellant's left-shoulder pain was arthropathic and that radiculopathy could not be excluded. He noted that appellant's shoulder and neck pain and carpal tunnel condition were job related. Dr. Davis released appellant to return to work with restrictions on appellant's work activity.

Dr. Thorn referred appellant to Dr. Mitchell for his neck and shoulder problems. Dr. Mitchell reported that appellant's symptoms were consistent with an acromioclavicular problem, and he ordered a Depo–Medrol and Lidocaine injection. Dr. Mitchell's report indicated that appellant suffered from numbness and pain in his left hand and wrist. Dr. Mitchell opined that appellant suffered from moderately severe carpal tunnel syndrome and acromioclavicular arthropathy on the left side. He also noted some osteophyte formation in his neck that was causing some radiculopathy. He recommended a distal clavicle resection and a carpal tunnel release on the left side. Appellant underwent surgery for carpal tunnel syndrome. As of January 30, 2006, Dr. Mitchell recommended that appellant remain on light duty. On March 2, 2006, Dr. Mitchell opined that appellant was unable to return to work on regular duty. Dr. Mitchell continued appellant on work restrictions of no lifting greater than ten pounds for his left shoulder on April 3, 2006. A September 22, 2006 MRI of appellant's cervical spine, ordered by Dr. Mitchell, revealed central disk protrusion at C4–5 resulting in mild to moderate central canal stenosis and mild anterior cord flattening, and diffuse annular-disk bulging acentric on the left at C5–6 resulting in mild left-anterior lateral-cord flattening and mild left-foraminal narrowing. Dr. Mitchell opined on September 25, 2006, that appellant was restricted from lifting anything greater than ten pounds with his left upper extremity. In late 2006, appellant underwent shoulder surgery and was ultimately given a ten-percent impairment rating.

While appellant was being treated by Dr. Mitchell, Dr. Mitchell referred appellant to Dr. Johnson. Appellant saw Dr. Johnson in December 2004 for EMG and nerve-conduction studies of the left arm. Dr. Johnson assessed appellant with left carpal tunnel syndrome and left-C5 and C6 radiculopathy, but was unsure as to which level to place the lesion since the paraspinal examination was limited by the presence of spasms. Dr. Johnson recommended further testing on appellant's cervical spine and recommended the use of hand splints for the carpal tunnel injury. Appellant testified that his pain persisted.

Dr. Mitchell also referred appellant to Dr. Armstrong. In a November 27, 2006 letter to Dr. Mitchell, Dr. Armstrong wrote that appellant's cervical spine range of motion was diminished by approximately twenty to thirty degrees in flexion, extension, side bending, and rotation, and

1. Appellant testified that after the trip to the emergency room, appellee told him there was no work for him within his restrictions.

that there was a tissue-texture change, muscle spasm, and tenderness noted in the posterior cervical-spinal muscles, especially in the midline of the splenius capitis and semispinalis regions. He noted that appellant's MRI of his cervical spine revealed cervical-disc degeneration with dystrophic changes of the bone at C4, C5, and C6 with disc-space degeneration at all three levels. Dr. Armstrong diagnosed appellant with cervical strain and cervical-myofascial neuralgia, cervical-disc degeneration, and significant cervical-bone degeneration at C4, C5, and C6. Based on the findings, Dr. Armstrong did not recommend surgery for appellant's cervical spine, but recommended conservative care such as "physical therapy on a formal basis," possible treatment by a pain specialist, and reevaluation by Dr. Armstrong in two months. Appellant testified that while the therapy improved his condition slightly, he was still experiencing pain. In November 2006, Dr. Armstrong ordered that appellant remain off work until a date to be determined.

Appellant saw Dr. Armstrong for a follow-up appointment on January 29, 2007. In Dr. Armstrong's clinic notes, he stated that appellant had "not improved at all," continued to have "a lot of pain in his posterior cervical region," had bilateral upper-extremity dysesthesias and numbness and pain in the hands, had no frank radiculopathy, but had "a lot of cervical pain and myofascial dysfunction." After two months of therapy, appellant had not improved "at all." Dr. Armstrong suggested that appellant had reached maximum medical improvement, and suggested that appellant see Dr. Moffit for a disability rating and Dr. Mitchell for a bilateral carpal-tunnel-syndrome disability rating. He prescribed further physical therapy and cervical strengthening and stretching for appellant's neck pain. Also in the January 2007 clinic notes, Dr. Armstrong stated, "All the above was discussed with the patient in detail as well as the fact that really surgery would not benefit his condition at the present time. Of course, he can get a second opinion from Dr. Blankenship or Dr. Knox should he so desire." On February 12, 2007, Dr. Armstrong signed a work release for appellant stating that appellant was to remain off work until further notice.

Appellant saw Dr. Knox on June 5, 2007. In a follow-up letter, Dr. Knox noted that appellant complained of continued arm pain, hand numbness and tingling, and significant neck pain. Appellant had diminished sensation in his left hand with significant paraspinal muscle spasm. Dr. Knox noted that he was "more impressed with his MRI than it appears Dr. Armstrong was." He noted "significant disc space changes, compatible with appellant's current symptoms." Dr. Knox recommended that appellant have another MRI "on a better MRI scanner" to determine if the cervical discs had improved or worsened since the September 2006 MRI and then to return to him for a follow-up. An additional MRI was taken on June 6, 2007, which showed a "herniated disc at C3–4, with significant disc space changes at C4–5 and mild herniation at C5–6." Dr. Knox recommended a course of epidural steroid injections and physical therapy. Dr. Knox did not "believe surgical options would be in appellant's best interest at this point." In a letter dated September 12, 2007, Dr. Knox noted that worker's compensation had denied the epidural steroids and physical therapy, and thus, he did not "have much else to offer [appellant]." After a return visit, Dr. Knox wrote a letter that appellant continued to be "plagued with significant neck and left arm pain" and only received temporary relief with chiropractic measures. He suggested that appellant consider surgical options because conservative treatment had "been denied

by his worker's compensation carrier." Dr. Knox further suggested that it might be "more prudent for [appellant] to go ahead and pursue disability determination if he wants to avoid surgical options."

At the 2005 hearing, the ALJ found that appellant had proved by a preponderance of the evidence that he sustained a compensable injury to his neck and left shoulder while working for the respondent on October 28, 2004; that appellant had proven by a preponderance of the evidence that his left carpal tunnel syndrome was a result of his work for respondent; and that appellant was entitled to temporary-total disability from December 20, 2004, to a date to be determined. On August 1, 2006, the opinion was affirmed and adopted by the Commission. On April 10, 2007, a second hearing was held before the ALJ. The issues to be litigated were appellant's entitlement to temporary-total disability from May 15, 2006, to January 27, 2007; additional medical treatment for cervical-spine problems; contempt for noncompliance with the Commission's order; and attorney fees. At the conclusion of the hearing, the ALJ found that appellant had proved by a preponderance of the evidence that he was entitled to additional medical treatment for his compensable neck injury; that appellant had proved by a preponderance of the evidence that he was entitled to additional temporary-total disability from May 15, 2006, to January 27, 2007; that appellant was entitled to reimbursement for his out-of-pocket expenses in connection with his surgery for his shoulder injury and carpal tunnel injury; and that if respondents failed to comply with the order, then contempt due to failure to comply would be considered. This decision was affirmed and adopted by the Commission on September 27, 2007.

On April 15, 2008, a third hearing was held before the ALJ, where issues were decided that are the subject of this appeal. The ALJ found that appellant had failed to prove by a preponderance of the evidence that he was entitled to additional medical treatment by Dr. Knox or his referrals; that appellant failed to prove by a preponderance of the evidence that he was entitled to additional temporary total disability benefits; and that appellant failed to prove by a preponderance of the evidence that the respondents were in contempt of the Commission's previous orders. The Commission affirmed and adopted the opinion of the ALJ on April 13, 2009. This appeal followed.

Typically, on appeal to this court, we review only the decision of the Commission, not that of the ALJ. *Daniels v. Affiliated Foods Sw.*, 70 Ark.App. 319, 17 S.W.3d 817 (2000). In this case, the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law. *See Death & Permanent Total Disability Trust Fund v. Branum*, 82 Ark.App. 338, 107 S.W.3d 876 (2003). Moreover, in so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *See id.* When the Commission adopts the conclusions of the ALJ, this court considers both the decision of the Commission and the decision of the ALJ. *See id.*

In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Wal–Mart Stores, Inc. v. Sands*, 80 Ark. App. 51, 91 S.W.3d 93 (2002). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). The question is not whether the

evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had been sitting as the trier of fact or hearing the case de novo. *CDI Contractors v. McHale*, 41 Ark.App. 57, 848 S.W.2d 941 (1993). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *White v. Ga.-Pac. Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999). Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Ark. Dep't of Health v. Williams*, 43 Ark.App. 169, 863 S.W.2d 583 (1993). In addition, the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. *Hill v. Baptist Med. Ctr.*, 74 Ark.App. 250, 48 S.W.3d 544 (2001).

### Additional Medical Treatment by Dr. Knox

For his first point on appeal, appellant asserts that the Commission erred in finding that appellant failed to prove by a preponderance of the evidence that he is entitled to additional medical treatment from Dr. Knox or his referrals for his compensable injury. The workers' compensation statutes provide that an "employer shall promptly provide for an injured employee such medical ... services ... as may be reasonably necessary in connection with the injury received by the employee." Ark.Code Ann. § 11–9–508(a) (Supp.2007). The injured employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonably necessary for treatment of a compensable injury. Ark.Code Ann. § 11–

9–705(a)(3) (Repl.2002); *Jordan v. Tyson Foods, Inc.*, 51 Ark.App. 100, 911 S.W.2d 593 (1995). What constitutes reasonable and necessary treatment is a question of fact for the Commission. *Gansky v. Hi-Tech Eng'g*, 325 Ark. 163, 924 S.W.2d 790 (1996); *Cox v. Klipsch & Assoc.*, 71 Ark. App. 433, 30 S.W.3d 764 (2000).

In this case, appellant had been evaluated by several physicians and specialists. In 2006, appellant saw Dr. Armstrong, and he thoroughly examined and treated appellant. At a follow-up appointment a couple of months later, Dr. Armstrong noted that appellant had shown little improvement and continued to have significant pain, but determined that appellant had, in his opinion, reached maximum medical improvement. He recommended that appellant continue the physical therapy and cervical strengthening and stretching for appellant's neck pain. At this point, it was still Dr. Armstrong's opinion that appellant would not benefit from surgery.

Appellant was also evaluated by Dr. Knox, who recommended two courses of treatment, one of which was physical therapy and epidural steroid injections. This course of conservative treatment was very similar to Dr. Armstrong's recommendation. Dr. Knox also suggested surgery, based on appellant's complaints of pain, as an alternative option for appellant; however, Dr. Armstrong had opined that surgery would not improve appellant's condition or alleviate his symptoms. The Commission has the duty of weighing the medical evidence as it does any other evidence. *Liaromatis v. Baxter County Reg'l Hosp.*, 95 Ark.App. 296, 298, 236 S.W.3d 524, 526 (2006). The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury

verdict. *Poulan Weed Eater v. Marshall,* 79 Ark.App. 129, 84 S.W.3d 878 (2002). Here, Dr. Armstrong opined that appellant would not benefit from surgery and that he had reached maximum medical improvement. On these facts, we hold that substantial evidence supports the decision of the ALJ and that of the Commission that appellant was not entitled to additional medical treatment by Dr. Knox.

### Additional Temporary–Total Disability for Neck Injury

For his second argument on appeal, appellant asserts that the Commission erred in finding that appellant failed to prove by a preponderance of the evidence that he was entitled to additional temporary-total-disability benefits. Temporary-total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages; the healing period is that period for healing of an accidental injury that continues until the employee is as far restored as the permanent character of his injury will permit, and that ends when the underlying condition causing the disability has become stable and nothing in the way of treatment will improve that condition. *Carroll Gen. Hosp. v. Green,* 54 Ark.App. 102, 923 S.W.2d 878 (1996). The determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence. *Id.* These are matters of weight and credibility, and thus lie within the exclusive province of the Commission. *Farmers Coop. v. Biles,* 77 Ark.App. 1, 4–5, 69 S.W.3d 899, 902 (2002).

In this case, appellant was injured in December 2004. Appellant began receiving temporary-total disability on December 20, 2004. Superior Industries paid appellant temporary-total-disability benefits until May 15, 2006. After a second hearing, the ALJ extended appellant's temporary-total-disability benefits from May 15, 2006, until January 27, 2007, the date that Dr. Armstrong opined appellant had reached maximum medical improvement. Appellant saw Dr. Knox on June 5, 2007, after it had been determined that his healing period had ended and that he was as far restored as the permanent character of his injury would permit. There was no medical evidence that appellant had reentered his healing period after the date determined by Dr. Armstrong that appellant had reached maximum medical improvement. Dr. Knox's recommendations were based on appellant's complaints of continued pain. While appellant testified that he had persistent pain, persistence of pain is not sufficient in itself to extend the healing period or to find that appellant is totally incapacitated from earning wages. *Mad Butcher, Inc. v. Parker,* 4 Ark.App. 124, 628 S.W.2d 582 (1982). We hold that there was substantial evidence to support the Commission's determination that appellant was not entitled to temporary-total disability past the ending date of January 27, 2007.

### Contempt of the Commission's Previous Orders

For his third and final argument on appeal, appellant asserts that the Commission erred in finding that appellant failed to prove by a preponderance of the evidence that the appellees are in contempt of the Commission's previous orders pursuant to Arkansas Code Annotated sections 11–9–706(b) and 11–9–802 (Repl. 2002). Section 11–9–706(b) provides that if a person or party refuses to comply with an order of the ALJ or the Commission, then the person or party may be found to be in contempt of the Commission. Section 11–9–802 provides that "in the event that the commission finds the failure to pay any benefit is willful and intentional,

the penalty shall be up to thirty-six percent (36%), payable to the claimant."

Appellant argues that because he was entitled to reasonable and necessary medical care, Superior Industries violated the Commission's previous orders when it failed to pay for the treatment recommended by Dr. Knox. However, Superior Industries is entitled to challenge the reasonableness of the new treatment recommended by Dr. Knox and substantial evidence supported the ALJ and the Commission's determination that the suggested treatment by Dr. Knox was not reasonable and necessary.

Therefore, the Commission did not err in its determination that Superior Industries was not in contempt of previous Commission orders.

Affirmed.

GRUBER and BROWN, JJ., agree.