2009 Ark. App. 760

**CURT BEAN TRANSPORT, INC. and Compensation Managers, Inc., Appellants,**

v.

**Lawrence HILL, Appellee.**

**No. CA 09–419.**

Court of Appeals of Arkansas.

Nov. 11, 2009.

Rehearing Denied Dec. 16, 2009.

Walter A. Murray, Little Rock, for appellants.

Gary Davis, Little Rock, for appellee.

KAREN R. BAKER, Judge.

The primary issue in this workers' compensation case is whether the statutory presumption of intoxication found in Ark. Code Ann. § 11–9–102(4)(B)(iv)(b) (Supp. 2009) is raised by a claimant's refusal to take the particular test requested by the employer. The parties do not dispute that appellant, Curt Bean Transport, Inc., requested that appellee, Lawrence Hill, take a hair-follicle test four days after he wrecked a large truck and that he refused. Curt Bean appeals the ruling of the Workers' Compensation Commission that Hill's injuries from the wreck were compensable despite his refusal to take the requested test. It argues that the Commission's decision should be reversed because it is founded upon an erroneous interpretation of Ark.Code Ann. § 11–9–102(4)(B)(iv)(b). We disagree and affirm the Commission's decision.

Hill was employed by Curt Bean Transport, Inc., as a long-haul truck driver. On December 1, 2007, Mr. Hill left Curt Bean's yard in Fort Smith, Arkansas, and began a trip to Ohio. While he was in route through Nashville, Tennessee, his trailer flipped as he traveled on an expressway. Shortly after the accident, the Metro Nashville police arrived along with an official from the Department of Transportation. Mr. Hill told authorities that he was traveling too fast on what he described as a "sort of a semi curving highway," and his

load "shifted." According to a Tennessee Uniform Crash Report prepared by the officer, this was a one-vehicle accident with one occupant, the driver's condition appeared to be "normal," and neither alcohol nor drugs were "observed."

Mr. Dennis Wouters, accident manager for Curt Bean Transport, spoke by phone with Hill the day of the accident and on several occasions in the days following the accident. Wouters testified that Hill did not seem to be "intoxicated in any way" during their conversations. Each time Wouters spoke with Hill, Hill told him that he was experiencing soreness but was not injured and did not need medical attention. Hill confirmed that he told Curt Bean representatives that he did not need medical attention and had not suffered any injuries. After the accident, Hill was transported to a motel to rest. Hill testified that he was feeling "really shaken up" and "feeling a little stiff and sore," but didn't really think anything other than he had been in an accident. On December 3, Hill requested permission to remain in the motel for another day or two for rest, and his request was granted. He testified, however, that he got progressively worse and "could hardly walk" and had pain down his left leg. Ms. Brunetta Smith Jackson, Hill's girlfriend, arrived in Nashville on December 3, 2007, to drive Hill back to Atlanta, Georgia. She testified that when she arrived at Hill's motel room, she found him in "rough physical shape." She stated that he was in a lot of pain. Jackson, herself, was recovering from surgery, so the two waited another day before beginning the trip back to Atlanta. Jackson testified that on the way to Atlanta, she stopped to purchase two twenty-ounce beers for Hill.

On December 3, 2007, Mr. Tommy Gage, director of safety at Curt Bean Transport, spoke with Hill for the first time. The company handbook was not offered into evidence, and Mr. Gage testified only that Curt Bean had a policy that stated that a major accident could lead to an employee's termination. Mr. Gage testified that when he spoke to Hill, Hill expressed concern about losing his job at Curt Bean. On December 5, 2007, Hill was taken to Southern Regional Medical Center emergency room in Riverdale, Georgia, by Ms. Jackson with complaints of right leg, shoulder, neck, and back pain. He was prescribed Flexeril and Vicodin. The emergency room visit was reported by telephone to Gage. During the phone conversation between Mr. Hill and Mr. Gage, Gage informed Hill that he did not have authorization to go to the doctor. Nevertheless, Gage requested that Hill undergo a hair-follicle test for intoxicants while at the hospital for treatment. Gage testified that as the director of safety, he was allowed to require Hill to take a drug test. Hill did not submit to this request and told Gage that he thought it "was a trick." Hill testified he offered to give a urine sample, a blood sample, "but this pulling my hair, you know, I didn't understand." Hill did provide a urine sample, but did not see or know of the results of the test. Hill also testified that he asked the hospital personnel to take a hair sample; however, no hair sample was taken. Hill received his termination letter within a few days after his emergency room visit. Mr. Hill testified that he was not directed to a facility for the purpose of having a hair-follicle test performed, he did not receive a letter in the mail directing him to some place to have a hair-follicle test performed, nor was he directed to properly trained medical or law enforcement personnel for the purpose of having a hair-follicle test performed. Gage testified that he did not make arrangements for a hair-follicle drug test because Hill said he would not participate.

Gage also said he was not aware that Hill had undergone urine testing.

Gage admitted that the company policy did not specify which drug test the company could require, but said that, as director of safety, he had the prerogative to determine that Hill should have a hair-follicle test instead of a urine or blood test. Gage stated that he did this "without the advent of anything in the policy to that effect," the policy did not clarify what sort of drug testing the employee was expected to undergo, and the policy did not state that the employee was "expected to undergo reasonable drug testing following an accident." Mr. Wouters, accident manager for Curt Bean, testified that he did not have a copy of the company handbook with him at the hearing and that the company provided the uninjured driver a bus ticket to his or her home when a driver has a major accident.

On December 8, Hill was treated at Piedmont Hospital and was referred to a specialist for additional treatment. He received physical therapy and underwent x-rays and an MRI of his cervical and lumbar spine. The MRI revealed that "subtle small broad based left posterolateral to foraminal contained disc herniation at the L5–S1 level abuts the proximal left S1 nerve root. This is consistent with the patient's clinical symptoms. No other abnormalities are observed." Hill testified that he continued to have pain near his tail bone and a burning pain down his left leg. He admitted that he had used illegal drugs in the past and that he had served time in prison in 1993 for illegal drug use. Hill testified that he had not used drugs since then.

Curt Bean stipulated that Hill sustained an injury on December 1, 2007, and remained in his healing period. Curt Bean Transport also stipulated that Hill was an employee of Curt Bean at the time of the

accident, that the accident occurred, and that Hill was in the course and scope of his employment at the time of the accident. Curt Bean's affirmative defense was that because Mr. Hill was asked to take a hair-follicle drug test and refused to do so, the presumption of intoxication or drug use arose pursuant to Arkansas Code Annotated section 11–9–102(4)(B)(iv) and that Hill could not overcome the presumption. The ALJ determined that Mr. Hill sustained compensable injuries entitling him to temporary disability and medical benefits, that Curt Bean failed to establish an intoxication defense, and that even if the presumption had been raised, it would have been rebutted by the length of time that had passed from the date of the accident until Curt Bean's alleged request for a drug screen and the observations of the police officer noted at the time of the accident. The Commission affirmed and adopted the opinion of the ALJ.

Typically, on appeal to this court, we review only the decision of the Commission, not that of the ALJ. *Daniels v. Affiliated Foods Sw.*, 70 Ark.App. 319, 17 S.W.3d 817 (2000). Under Arkansas law, the Commission is permitted to adopt the ALJ's decision. *See Death & Permanent Total Disability Trust Fund v. Branum*, 82 Ark.App. 338, 107 S.W.3d 876 (2003) (citing *Odom v. Tosco Corp.*, 12 Ark.App. 196, 672 S.W.2d 915 (1984)). Moreover, in so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *See Branum, supra.* In this particular case, the Commission affirmed and adopted the ALJ's opinion as its own. Therefore, for purposes of our review, we consider both the ALJ's order and the Commission's majority order.

When reviewing a decision of the Commission, we view the evidence and all reasonable inferences deducible therefrom

in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Liaromatis v. Baxter County Reg'l Hosp.*, 95 Ark.App. 296, 236 S.W.3d 524 (2006) (citing *Clark v. Peabody Testing Serv.*, 265 Ark. 489, 579 S.W.2d 360 (1979); *Crossett Sch. Dist. v. Gourley*, 50 Ark.App. 1, 899 S.W.2d 482 (1995)). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Wright v. ABC Air, Inc.*, 44 Ark.App. 5, 864 S.W.2d 871 (1993). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; even if a preponderance of the evidence might indicate a contrary result, if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *St. Vincent Infirmary Med. Ctr. v. Brown,* 53 Ark.App. 30, 917 S.W.2d 550 (1996). The Commission is required to weigh the evidence impartially without giving the benefit of the doubt to any party. *Keller v. L.A. Darling Fixtures*, 40 Ark. App. 94, 845 S.W.2d 15 (1992).

Curt Bean argues that it presented sufficient proof of the affirmative defense set forth in Arkansas Code Annotated section 11–9–102(4)(B)(iv) "by showing that claimant refused a drug test," and thus, the burden shifted to Mr. Hill to overcome that presumption. Curt Bean argues that Hill's refusal to submit to a hair-follicle test required by his employer triggered "by operation of law, the presumption." [1] We disagree. Arkansas Code Annotated section 11–9–102(4)(B)(iv) (Supp.2009), states in relevant part:

(4) (B) "Compensable injury" does not include:

(iv) (a) Injury where the accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders.

(b) The *presence* of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's orders shall *create a rebuttable presumption* that the injury or accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders.

(c) Every employee is deemed by his or her performance of services to have impliedly consented to *reasonable and responsible testing* by properly trained medical or law enforcement personnel for the presence of any of the aforementioned substances in the employee's body.

(d) An employee shall not be entitled to compensation unless it is proved by a preponderance of the evidence that the alcohol, illegal drugs, or prescription drugs utilized in contravention of the physician's orders did not substantially occasion the injury or accident.

(Emphasis added.)

This court reviews issues of statutory construction de novo, as it is for this court to decide what a statute means. *Johnson v. Bonds Fertilizer, Inc.*, 365 Ark. 133, 226 S.W.3d 753 (2006) (citing *MacSteel v. Ark. Okla. Gas Corp.*, 363 Ark. 22, 210 S.W.3d 878 (2005)). Arkansas Code

---

1. Curt Bean also raises a public policy argument. The ALJ and Commission, however, found this argument not to be supported by any authority and therefore gave it little weight. *See Stutzman v. Baxter Healthcare Corp.*, 99 Ark.App. 19, 256 S.W.3d 524 (2007) (stating that where an appellant fails to make a convincing argument or to cite convincing authority in support of it, we will not address the argument); *Freeman v. Con–Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001) (holding that the appellate courts defer to the Commission on issues involving the weight of the evidence).

Annotated section 11–9–704(c) (Repl.2002) requires that we construe workers' compensation statutes strictly. Strict construction requires that nothing be taken as intended that is not clearly expressed, and its doctrine is to use the plain meaning of the language employed. *American Standard Travelers Indem. Co. v. Post,* 78 Ark. App. 79, 77 S.W.3d 554 (2002). The basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the legislature. *Teasley v. Hermann Cos.,* 92 Ark.App. 40, 211 S.W.3d 40 (2005). When a statute is clear, however, it is given its plain meaning, and the appellate court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* (citing *American Standard Travelers Indem. Co., supra* ).

Curt Bean contends on appeal that it did all that was required to prove its affirmative defense to compensability by showing that Hill refused a drug test pursuant to section 11–9–102(4)(B)(iv). This argument fails. A statutory presumption is a rule of law by which the finding of a basic fact gives rise to the existence of a presumed fact, unless sufficient evidence to the contrary is presented to rebut that presumption. *ERC Contractor Yard & Sales v. Robertson,* 335 Ark. 63, 977 S.W.2d 212 (1998) (citing *Stone v. State,* 254 Ark. 1011, 498 S.W.2d 634 (1973)); *Black's Law Dictionary* 1185 (6th ed.1990). In *ERC Contractor,* the court stated as follows:

[T]he basic fact that will invoke the application of the presumption is the presence of alcohol. The plain language of Ark.Code Ann. § 11–9–102 provides that once the presence of alcohol is established as a fact, there is a presumption that any injury or accident was substantially occasioned by the use of alcohol. The statute does not quantify the term "presence." Therefore, alcohol is present whenever any amount of alcohol is revealed, no matter how small.

*ERC Contractor,* 335 Ark. at 69, 977 S.W.2d at 215. The plain language of the statute does not specify that a refusal of a drug test is sufficient to create the presumption. Rather it states specifically that the *presence* of alcohol or drugs creates the presumption, and this court will not interpret the statute, as appellant requests, to mean that Hill's refusal to submit to a drug test creates the rebuttable presumption.

More importantly, the plain language of the statute does not require that an employee take a drug test of the employer's choosing but refers only to "reasonable and responsible testing." This court has previously stated in *Brown v. Alabama Electric Co.,* 60 Ark.App. 138, 144, 959 S.W.2d 753, 756 (1998), that section 11–9–102 does not require that the Commission promulgate drug-testing procedures or specify particular types of tests to be used as a precondition to the intoxication presumption. The Arkansas General Assembly could have required testing that would show a certain level of illegal drugs, as it has required to invoke the presumption in DWI cases, but it has not made such a requirement. Our supreme court agreed with that assessment in *Flowers v. Norman Oaks Construction Co.,* 341 Ark. 474, 17 S.W.3d 472 (2000).

Under the facts of this case, we hold that substantial evidence supports the

ALJ and the Commission's finding that Curt Bean did not meet its burden of proving the presence of alcohol or drugs in order to create the rebuttable presumption of intoxication. We further agree with the ALJ and the Commission that even if the presumption of intoxication had been created, it was rebutted by the length of time between the date of the accident and Curt Bean's request for hair-follicle testing and by the observations of the police officer at the scene of the accident that Mr. Hill appeared normal and that no alcohol or drugs were observed.

Affirmed.

GRUBER and BROWN, JJ., agree.