2010 Ark. App. 208
**Bobby AYERS, Appellant**

v.

**DOMTAR INDUSTRIES and Liberty Mutual Insurance, Appellees.**

**No. CA 09–964.**

Court of Appeals of Arkansas.

March 3, 2010.

ROBERT J. GLADWIN, Judge.

Appellant Bobby Ayers appeals the June 22, 2009 decision of the Arkansas Workers' Compensation Commission finding that Ayers failed to prove that he sustained a compensable injury to his lumbar spine. On appeal, Ayers contends that the Commission's decision is not supported by substantial evidence. We affirm.

### Statement of Facts

At the hearing before the Administrative Law Judge, Ayers contended that he sustained a compensable lumbar-spine injury on July 30, 2007, and underwent spine surgery at the Veteran's Administration Hospital in Little Rock, Arkansas, on January 22, 2008. He claimed that Domtar Industries and Liberty Mutual Insurance (Domtar) should pay for that surgery. He also claimed that he was entitled to temporary-total-disability benefits from November 5, 2007, to a date to be determined, all associated medical benefits, and attorney's fees. He argued that Domtar would not be entitled to an offset under Arkansas Code Annotated section 11–9–411 (Supp. 2009).

Domtar contended at the full hearing that Ayers first reported a pop in his mid-to-upper back; that he was then treated and released for that condition and later went to the VA Hospital and had surgery at a different location on his back; that Ayers's condition was not the result of an injury at work but was a low-back condition degenerative in nature and preexisting. Domtar contended that, should the claim be found compensable, it would be entitled to an offset for the payments now coming from the VA to Ayers pursuant to Arkansas Code Annotated section 11–9–411.

Ayers, age thirty, testified that he served in the Marine Corps for approximately four years after high school and

Kenneth A. Olsen, Bryant, for appellant.

then received an honorable discharge. While in the Marine Corps he developed problems with his low back:

Q Now, you also testified that during the time that you were in the Marines you developed some physical problems that were not the result of a specific injury but just—you started to have back problems, correct?

A Yes.

Q Did you receive any kind of back treatment while you were in the service?

A Yes.

Q And was that at the L5–S1 level of your back?

A Yes.

Q And did you have an MRI done or any kind of diagnostic testing while you were in Hawaii?

A Yes.

Q And do you know what the results of the testing were?

A I believe they said it was a bulging disc.

Q At that level that we spoke of?

A Yes, L5–S1.

Q Did you receive any kind of treatment like therapy or injections for that?

A Yes.

Q Did you have access to medical treatment while in Hawaii?

A Yes.

Ayers qualified for a service-related disability of forty percent awarded for problems with his back, knee, and stomach. As a result of his forty-percent disability from the military, he started receiving, and still receives, $1,136.00 per month from the VA. After leaving the military in 2000, he took some time off work and then worked for some construction companies and worked for the Sevier County Road Department before going to work for Domtar Industries sometime in 2002. The parties stipulated that Ayers sustained a compensable thoracic-spine injury on July 30, 2007, and Ayers testified as follows regarding the incident that lead to his stipulated compensable thoracic-spine injury:

Q What happened on that day that would cause you to feel like you injured yourself?

A Well, I had to push a roll into a machine and I had already pushed in six—no, five rolls. On the sixth one, it's in the very back and you don't have anywhere to put your foot or nothing against, you've just got to kind of push it in. When I pushed it in, something popped in my back.

Ayers claimed that the same incident that caused his compensable thoracic-spine injury also caused him to have a compensable lumbar-spine injury. Domtar controverted the lumbar-spine injury in its entirety.

Ayers testified that in the weeks prior to July 30, 2007, he reported to a VA doctor at the Texarkana Clinic with complaints about his low back. As a result of his encounter with the VA doctor, he was prescribed muscle relaxers. He testified that between his appointment at the VA sometime in July of 2007, and July 30, 2007, he was taking muscle relaxers for his low back.

On August 16, 2007, Ayers underwent an MRI of the lumbar spine on the orders of neurologist Dr. Steven Cathey. Dr. Joseph Robbins read Ayers's August 16, 2007 lumbar-spine MRI and opined the following:

Subligamentous protrusion at the L5–S1 level which, combined with the right facette hypertrophy, causes primarily mild to moderate right L5 foraminal narrowing. There is no severe root impinge-

ment or significant encroachment upon the thecal sac. No acute disk extrusion.

Dr. Cathey did not recommend surgery, but prescribed physical therapy. Dr. Cathey released Ayers for work on November 5, 2007. Ayers then went to Dr. Dennis McDonnell, who performed surgery at L5–S1 on January 22, 2008. When Ayers continued to complain, McDonnell recommended that Ayers might benefit from another surgery at L5–S1.

The Administrative Law Judge found as follows:

> It is clear to this examiner that the L5–S1 disc protrusion opined by Dr. Robbins is markedly similar to the L5–S1 "bulge" that the claimant testified he had while in the Marine Corps. Once again, the claimant testified that his L5–S1 bulge was confirmed by MRI while he was in the military and as a result combined with other conditions which lead to his 40% disability compensation he now receives from the Veterans Administration.

> It is clear to this examiner that the claimant had a preexisting problem at L5–S1 level for several years prior to working for Domtar and that it is equally as clear that the claimant continued to have those problems immediately up to July 30, 2007. The claimant's preexisting lumbar back condition was such a problem that the claimant had to seek medical treatment mere days prior to the July 30, 2007, incident where the claimant sustained a stipulated thoracic spine injury.

> In making my determination that the claimant has failed to prove by a preponderance of the evidence that he sustained a compensable lumbar spine injury on July 30, 2007, I do not disregard *Heritage Baptist Temple v. Robinson*, 82 Ark.App. 460, 120 S.W.3d 152 [150] (2003), which states that employ-

ment circumstances that aggravate preexisting conditions are compensable. I simply do not find that the claimant aggravated his preexisting lumbar back condition. The medical evidence does not support any objective medical finding of any new injury, or aggravation to the claimant's preexisting lumbar back condition as required under our Act. The only objective findings relate to preexisting conditions without evidence of new injury. Therefore, I find that the claimant has failed to prove by a preponderance of the evidence that he sustained a compensable lumbar spine injury while working for Domtar Industries on July 30, 2007. The claimant has the burden of proving the job relatedness of an alleged injury, and in this case the claimant has failed to meet his burden.

The Commission affirmed and adopted the decision of the ALJ. This appeal followed.

### Standard of Review

 Typically, on appeal to this court, we review only the decision of the Commission, not that of the ALJ. *Daniels v. Affiliated Foods Sw.*, 70 Ark.App. 319, 17 S.W.3d 817 (2000). In this case, the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law. *See Death & Perm. Total Disab. Trust Fund v. Branum*, 82 Ark.App. 338, 107 S.W.3d 876 (2003). Moreover, in so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Branum, supra.* Therefore, for purposes of our review, we consider both the ALJ's order and the Commission's majority order.

 Our court set forth our well-settled standard of review in workers' com-

pensation cases in *Neal v. Sparks Regional Medical Center,* 104 Ark.App. 97, 101–02, 289 S.W.3d 163, 167 (2008) (citations omitted):

> When reviewing a decision of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm. Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. A substantial basis exists if fair-minded persons could reach the same conclusion when considering the same facts.

> Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission, and when there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief.

### Discussion

■ Appellant contends that the Commission failed to consider the objective-medical finding of his diminished right-ankle reflex. He claims that Dr. Cathey and Dr. McDonnell both diagnosed him as having an absent right-ankle jerk reflex. Further, he claims that his MRI done in November 2007, at the VA indicated the presence of an extruded fragment of disc material from the L5–S1 disc that had broken off, was impinging on the thecal sac, and was migrating downward. He contends that these new objective findings were not considered by the Commission. He argues that once those objective findings were established, the Commission can appropriately consider the non-medical evidence of his subjective complaints of increased symptoms pursuant to *Wal–Mart Stores, Inc. v. VanWagner,* 337 Ark. 443, 990 S.W.2d 522 (1999).

He claims that the evidence is clear that he sustained an aggravation of his preexisting lumbar-spine condition while at work on July 30, 2007. He cites *Oliver v. Guardsmark,* 68 Ark.App. 24, 3 S.W.3d 336 (1999), for the proposition that an aggravation of a non-compensable condition by a compensable injury is itself compensable. Further, he contends that an aggravation is a new injury resulting from an independent incident. *Crudup v. Regal Ware, Inc.,* 341 Ark. 804, 20 S.W.3d 900 (2000). Finally, he claims that the Commission's failure to discuss his improvement following the surgery is in error. *See Hill v. Baptist Medical Ctr.,* 74 Ark. App. 250, 57 S.W.3d 735 (2001).

In upholding the Commission's decision, we point out that Dr. Cathey notes the lack of right-ankle reflex, but further opines that "I suspect this is an old finding in view of the fact that straight leg raising is negative bilaterally." There was nothing before the Commission to indicate that the injury Ayers received was caused or aggravated by the compensable injury he received. The fact that appellant was on medication for his lower back at the time of the injury, coupled with Dr. Cathey's recommendation, constitutes substan-

tial evidence that appellant did not receive a compensable injury to his lower back on July 30, 2007. Therefore, the Commission had before it substantial evidence to deny Ayers's claim, and accordingly, we affirm.

Affirmed.

HART and BROWN, JJ., agree.